396 A.2d 1371

**COMMONWEALTH of Pennsylvania**

v.

**Joseph BROCCO, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 12, 1977.

Decided Jan. 26, 1979.

Petition for Allowance of Appeal Denied May 27, 1980.

52

56

Nicholas A. Clemente, Philadelphia, for appellant.

Bernard L. Siegel, Deputy Attorney General Philadelphia, for Com., appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

The instant appeal is another in the long series of cases arising out of the activities of the January 1974 Philadelphia County Investigating Grand Jury. Appellant was charged in five separate indictments with conspiracy to commit perjury before the grand jury,[1] conspiracy,[2] solicitation to commit perjury[3] (three counts), theft by unlawful taking[4] (nine counts) and forgery[5] (fifty counts). He was acquitted of one count of forgery. The court imposed five consecutive sentences of one to two years on one count of each indictment and suspended sentence on the remaining counts for those indictments consisting of multiple counts.

Portions of the factual history will be set forth in more detail in the course of discussion of appellant's thirteen

1. 18 Pa. C.S. § 903.

2. 18 Pa. C.S. § 903.

3. 18 Pa. C.S. § 902.

4. 18 Pa. C.S. § 3921.

5. 18 Pa. C.S. § 4101.

assignments of error on which this appeal is based. Briefly, however, the facts are as follows. During the period from 1973 to 1975, appellant was employed as the superintendent of the Pennsylvania Department of Transportation (Penn-DOT) in the Philadelphia area. In his role as superintendent, appellant was in charge of submitting the pay records of the employees under his supervision to the appropriate office. From 1973 to 1975, appellant submitted fraudulent overtime records for five men under his supervision. Under the usual procedure, separate checks were issued for the regular pay of the employees and a different check for their overtime pay. The employees then came to the office in which appellant worked to receive their checks. The Commonwealth presented the five men who testified that they had not performed the work for which the overtime checks had been issued and had only received a few of the overtime checks that had been issued to them. They further testified that they endorsed the few checks that they had received and then turned them over to appellant. Finally, they testified that they had never received nor endorsed the majority of checks that had been issued in their names. Additional evidence established that appellant had forged the signatures of the employees on these additional checks and then used other employees to cash them.

The Commonwealth also presented evidence of a second interlocking conspiracy. At appellant's request, the five PennDOT employees were summoned to a meeting with appellant's attorney. At the meeting, appellant instructed them to testify that they had given him permission to cash the overtime checks on their behalf. The employees testified to this effect before the grand jury, but later admitted the falsity of their testimony.

After post-trial motions, appellant brought this appeal alleging thirteen assignments of error.[6] After a reviewing

6. We note that in his brief appellant has failed appellant has failed to include a statement of Questions Involved as required by Pa.R.A.P. 2111(a), 2115. He has, however, included a statement of each issue in the body of his brief prior to the discussion regarding that particular issue. Accordingly, we excuse the oversight in this case, but

the record we conclude that twelve of the assignments are without foundation. However, for reasons stated herein, we remand for a hearing regarding appellant's Pa.R.Crim.P. 1100 claim. Although appellant has raised numerous assignments of error, we deem only certain worthy of extensive discussion.[7]

## I.

Appellant's first assignment is that the investigating grand jury was without power or jurisdiction to investigate the crimes for which he was convicted. As mentioned, appellant was indicted pursuant to a presentment by the January 1974 Philadelphia Investigating Grand Jury. Without expounding at length upon the history of this grand jury, it will suffice to state that it was convened in 1972 and re-convened in 1974 to investigate corruption in the Philadelphia area involving Commonwealth and Philadelphia city officials and employees. In convening the grand jury, Judge Takiff delineated eight specific areas for investigation.[8]

decline to apply a similar result in future cases in which strict compliance to the aforementioned rules will be required.

**7.** In addition to the alleged errors discussed *infra*, appellant alleges that the trial below was flawed in the following additional respects:

(1) the prosecutor systematically excluded Italians from the jury by use of peremptory challenges;

(2) the court erred by denying appellant's motion to sever his trial from the rest of the defendants;

(3) the court erred by allowing the jury to follow along with the tape between himself and Criniti by means of a transcript;

(4) the court erred in refusing to permit appellant's expert to examine the tape, even though appellant had possession of the tape on two occasions;

(5) the court erred in denying his motion in arrest of judgment to the charge of solicitation to commit perjury;

(6) the charge of the lower court to the jury regarding conspiracy was vague;

(7) the handwriting expert from the state police did not qualify as an expert, the handwriting analysis of the forged checks was made from photocopies, and the chain of custody regarding the checks was not established.

After extensive review, we conclude that these additional assignments are without merit.

**8.** These areas consisted of the following:

Appellant contends that because the charges against him arose out of the investigation of PennDOT, and because PennDOT was not one of the eight enumerated areas of investigation, the grand jury exceeded its jurisdiction in investigating that agency and the judgment against him should be set aside and the indictments quashed. We find this contention to be wholly untenable.

In convening the grand jury, Judge Takiff charged the jurors with the task of investigating charges of corruption among government employees. In this respect, Judge Takiff delineated those areas in which evidence of specific instances of corruption was known. However, in addition to the eight enumerated areas of corruption, he concluded that corruption may exist in areas known only by the participants. Accordingly, he invested the grand jury with authority to investigate the enumerated areas of known corruption "and other cognate matters" which may as yet be unknown. Thus, we conclude that because the activities of appellant involved corruption by government officials, it was a "cognate" matter within the parameters of Judge Takiff's order. Accordingly, the grand jury did not exceed its jurisdiction in this particular case.

Appellant contends, however, that even if the investigation into the present scheme falls within the parameters of Judge Takiff's charge regarding "cognate matters," such a charge amounted to an open-ended authorization to unleash the "inquisitorial" powers of the grand jury. With this contention, we cannot agree.

(1) drug trafficking and corruption;
(2) illegal liquor sales, liquor related crimes and corruption of liquor officials;
(3) corruption in the Philadelphia Police Department;
(4) corruption in the awarding of public contracts;
(5) cigarette smuggling and corruption in the Cigarette Bureau of the Department of Revenue;
(6) corruption in the Philadelphia Office of the Liquor Control Board;
(7) extortion by employees of the Pennsylvania Department of Revenue;
(8) extortion by officials in enumerated regulatory agencies.
See In Re: January 1974 Philadelphia County Grand Jury Investigation, 458 Pa. 586, 590 n.1, 328 A.2d 485, 487 n.1 (1974).

In delineating the scope of a grand jury investigation, the rule in this Commonwealth is that

"[o]nce the concerns of society justify the convening of an investigating grand jury, it is given broad investigative power with which to adequately discharge its public responsibility. *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). 'When the grand jury is performing its investigatory function into a general problem area . . . society's interest is best served through a thorough and extensive investigation . . . .' *Wood v. Georgia,* 370 U.S. 375, 392, 82 S.Ct. 1364, 1374, 8 L.Ed.2d 569 (1962). These 'broad investigative powers to determine whether a crime has been committed and who has committed it,' *United States v. Dionisio,* 410 U.S. 1, 15, 93 S.Ct. 764, 772, 35 L.Ed.2d 67 (1973), '[serve] identifiable and legitimate state interests.' *Commonwealth v. McCloskey,* supra, 443 Pa. [117,] 137, 277 A.2d [764,] 774, [*cert. denied* 404 U.S. 1000, [92 S.Ct. 560, 30, L.Ed.2d 552] (1971)]." *Commonwealth v. Field,* 231 Pa.Super. 53, 59, 331 A.2d 744, 747 (1974).

Accordingly, because the scope of authority in the instant case extended to investigating corruption among officials in the Philadelphia area, and because the scope of inquiry in this respect is necessarily broad, *Commonwealth v. Field,* *supra,* neither the charge to the grand jury, nor the scope of its investigation was overly broad in this particular case.

## II.

Appellant's second assignment of error arises out of the grand jury proceeding during which six members of that jury were substituted more than one year after the grand jury had been sworn and had begun to hear evidence. In *Commonwealth v. Levinson,* 480 Pa. 273, 389 A.2d 1062 (1978), the supreme court affirmed an order of this court and held that such a substitution was impermissible. Since appellant's indictment arose out of a presentment by the same grand jury with the substitution of the same six jurors, he contends that the indictments against him should be quashed. We disagree.

In *Levinson,* the defendant was indicted by the regular grand jury on April 17, 1975, pursuant to a presentment by the investigating grand jury on March 19, 1975. After pre-trial motions, he appealed the substitution of jurors issue on August 1, 1975, under the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. V, § 501, 17 P.S. § 211.501(b) (Supp.1978–79). *See Commonwealth v. Levinson,* 239 Pa.Super. 387, 362 A.2d 1080 (1976). Thus, in *Levinson,* the defendant raised the substitution of jurors issue in a timely manner prior to the commencement of trial.

In *Commonwealth v. Lee,* 246 Pa.Super. 294, 369 A.2d 1329 (1977), the defendants raised the same issue regarding the substitution of jurors in the same investigating grand jury. In that case, the defendants were indicted on September 3, and November 18, 1975, pursuant to two presentments by the investigating grand jury. On December 19, 1975, the authorization for the investigating grand jury expired. Subsequently, the two defendants filed motions to quash the indictments on March 31, and April 7, 1976. Although the motions had been filed before commencement of the trial, this court ruled that they were not timely because the defendants had delayed until the grand jury had disbanded and thus prevented the Commonwealth from having the opportunity to correct the defect in the grand jury proceeding. In so holding, we stated:

"Where no statute, procedural rule or decision establishes a time limit for raising a particular objection, the rule is simply that the objection must be made within a reasonable time. [citation omitted]. The reasonableness of a delay in objecting must be determined on a case-by-case basis." *Id.,* 246 Pa.Super. at 298, 369 A.2d at 1331.

In this case, the presentment of the investigating grand jury issued on March 14, 1975, and the indictments issued on March 25, 26, and 31, 1975. Trial in the case was conducted from October 16, to November 1, 1975. Unlike the defendants in *Levinson* and *Lee,* appellant did not raise the defect in the substitution of the grand jurors at any time prior to commencement of the trial; indeed, the issue was not raised

until post-trial motions filed on November 6, 1975. Thus, although the defense was raised approximately six weeks prior to the expiration of the grand jury authorization, we held in *Lee* that such a scenario will not automatically mandate a conclusion that the objection was timely filed. *See Commonwealth v. Lee, supra,* 246 Pa.Super. at 299 n.3, 369 A.2d at 1331 n.3. Because appellant's post-trial motions were not denied until June 21, 1976, or six months after the disbanding of the grand jury, we find controlling our holding in *Lee* that the issue was raised at a time when it was too late for the Commonwealth to correct the defect in the grand jury proceeding. Moreover, since appellant failed to raise the substitution of the grand jurors prior to trial, but instead, chose to "remain silent and take chances on a verdict," *id.,* 246 Pa.Super. at 299, 369 A.2d at 1331, *quoting Commonwealth v. Marlin,* 452 Pa. 380, 382, 305 A.2d 14, 16 (1973), we conclude that his delay was unreasonable, and consequently he has waived that defense.

## III.

Appellant's sixth, seventh and eighth assignments of error relate to the admission into evidence of a taped conversion between himself and a co-worker, Nicholas Criniti. Criniti was one of the five employees for whom appellant submitted false overtime work sheets in order to perpetrate his payroll fraud. Originally, Criniti and the other co-workers were under investigation for their involvement in the affair. On January 31, 1975, on advice of counsel, Criniti went to the office of the special prosecutor to convince the investigators that he had not received any money from the overtime checks. While in the prosecutor's office, Criniti said he could prove his innocence by calling appellant on the telephone and soliciting a statement to the effect that he [Criniti] had not kept any of the money. He further suggested that the investigators listen in on the conversation by means of an extension telephone. Criniti was told that this was impossible under the then existing law, but that if he was willing, a listening device could be placed upon his body

after which he could contact appellant. Criniti agreed, was fitted with the device, and went to visit appellant at his office. Criniti testified that his only purpose in agreeing to wear the listening device was to help clear himself from suspicion, and not to procure evidence against appellant. (N.T. 580–81). During the conversation, appellant made certain incriminating statements which were recorded, and the tape was played at trial. Appellant objected to the admission of the tape into evidence for the following reasons: (1) introduction of the tape was contrary to the invasion of privacy provision of the Crimes Code, 18 Pa.C.S. §§ 5701–5705; (2) the Commonwealth's failure to disclose the existence of the tape prior to trial resulted in a denial of due process; and (3) the use of Criniti as an informant was a denial of his fifth amendment right against self-incrimination and his sixth amendment right to counsel. We find these arguments to be without merit.

■ First, the recording in this case was made on January 31, 1975. It is undisputed that under the 1974 amendments to the Crimes Code the taping of the conversation was improper, see 18 Pa.C.S. § 5705,[9] and under section three of that chapter, (18 Pa.C.S. § 5703), the tape would have been inadmissible as evidence. However, the invasion of privacy provision of the Crimes Code was not amended to cover the

9. 18 Pa.C.S. § 5705(a) provides in part:
"A person commits a misdemeanor of the second degree if he:
  (1) makes, sells, buys, makes use of, possesses, installs or employs any electronic, mechanical or other device for the purpose of eavesdropping; or
  (2) divulges or uses any information, knowing or having reason to know that such information was obtained by eavesdropping unless such divulgence or use is with the permission of the person or persons whose voice, voices or actions were the subject of the eavesdropping."
18 Pa.C.S. § 5701 defines "eavesdropping" as
"Surreptitiously listening to, monitoring, transmitting, amplifying or recording the voice of another person without the knowledge and approval of such other person by use of any electronic, mechanical or other device, but the term 'electronic, mechanical, or other device' does not include a hearing aid or similar device used by a person with impaired hearing, for the purpose of overcoming the impairment and permitting the hearing of sounds ordinarily audible to the human ear."

activity in the instant case until December 27, 1974, or thirty-five (35) days *prior* to the taping of the conversation between Criniti and appellant. The 1974 amendment did not contain a provision regarding its effective date; consequently, under 1 Pa.C.S. § 1701(a)(5), the effective date of the amendment was sixty (60) days after its passage (*i. e.* February 25, 1975) or twenty-five (25) days *after* the taping in the instant case. Accordingly, the issue for resolution is whether the tape was admissible in a case tried *after* the effective date of the amendment, although the actual taping occurred *prior* to that date.

In *Commonwealth v. Salvatori*, 236 Pa.Super. 140, 345 A.2d 725 (1975), this court was confronted with a situation like that in the instant case. In *Salvatori* we ruled:

> "The determinative factor is not the date the case goes to trial, but the date that the activity which produced the evidence in question was engaged in. . . . Had [the informant's] recording been conducted subsequent to February 25, 1975 it would have been a breach of privacy and as a result would not have been admissible. Since this was not the factual situation of the instant case, the evidence, therefore, need not be suppressed simply because the trial happens to fall after the effective date of the amendment." *Id.*, 236 Pa.Super. at 145, 345 A.2d at 727.

Therefore, because the conversation between appellant and Criniti was recorded prior to the time

> "such activity was prohibited, it cannot be said that this evidence was 'obtained as a result of a violation of privacy or breach of privacy.' [footnote omitted]. Because such evidence was not 'obtained as a result of a violation of privacy or breach of privacy' Section 5703 does not affect its admissibility." *Id.*

Second, appellant contends that the prosecutor's failure to disclose the existence of the tape to him prior to trial resulted in a denial of due process. At the time of the instant proceeding the scope of discovery in this Common-

wealth was governed by Pa.R.Crim.P. 310.[10]  Under Rule 310 appellant was required to apply to the court no later than five days prior to the commencement of trial regarding discovery of any materials.  In this case, trial commenced on October 16, 1975, and on that date appellant requested any exculpatory evidence and any statements made by him.  On October 22, 1975, Criniti testified regarding the existence of the tape, at which time appellant made an additional motion to obtain possession of the tape.  Thus, appellant's request did not comport with the five day rule mandated by Pa.R. Crim.P. 310.

█  Appellant contends, however, that the five day rule was not applicable to him.  As support for this contention, appellant reasons that Rule 310 only governs the discoverability of evidence of which he has knowledge, but is inapplicable to evidence which he does not know exists.  Because he was unaware of the existence of the tape, appellant argues that he was excused from adhering to the five day rule, and that his lack of knowledge imposed upon the prosecutor an affirmative duty to inform him regarding the existence of the tape.  With this contention we cannot agree.

█  The purpose of Rule 310 was to afford a defendant the opportunity to discover evidence which he did not know existed, as well as to seek possession of evidence of which he

10.  Rule 310 provides that:

"All applications of a defendant for pretrial discovery and inspection shall be made not less than five days prior to the scheduled date of trial.  The court may order the attorney for the Commonwealth to permit the defendant or his attorney, and such persons as are necessary to assist him, to inspect and copy or photograph any written confessions and written statements made by the defendant.  No other discovery or inspection shall be ordered except upon proof by the defendant, after hearing, of exceptional circumstances and compelling reasons.  The order shall specify the time, place and manner of making discovery or inspection and may prescribe such terms and conditions as are necessary and proper.  In no event, however, shall the court order pretrial discovery or inspection of written statements of witnesses in the possession of the Commonwealth."

Rule 310 has now been replaced by Pa.R.Crim.P. 305 which provides for expanded criminal discovery.

was aware. Thus, if appellant had timely requested the discovery of any statements made by him, the prosecutor would have been required to reveal the existence of the tape, and the court would have been required to rule regarding its discoverability under the standards of Rule 310. However, appellant's failure to timely request the information did not even call into play the operation of Rule 310. Likewise, we reject appellant's argument that his failure to request imposes upon the prosecutor a duty to reveal. To adopt such a construction of Rule 310 would be to encourage criminal defendants to remain silent and not specify any items for discovery thereby forcing prosecutors to reveal all evidence in their possession. Accordingly, the lower court was correct in ruling that appellant waived the benefits of Rule 310 by failing to timely request the discovery of the tape.[11]

Moreover, the record indicates that the tape and a transcript of the conversation were provided to appellant on October 22, 1975, the very day that Criniti testified regarding the existence of the tape. Since appellant had two days from October 22 to October 24, 1975, when the tape was played for the jury, to examine the tape, and did not allege that the transcript inaccurately reflected what was contained on the tape, we can perceive of no prejudice to appellant by the prosecutor's failure to disclose the existence of that evidence prior to commencement of trial.

Third, appellant contends that the mere use of Criniti to tape the conversation amounted to a denial of his fifth

11. In its opinion the court below ruled that even assuming a timely request by appellant, the tape would not have been discoverable pre-trial. In so ruling the court held that neither the tape nor the transcript was a "written statement made by the defendant" within Rule 310. Therefore, discovery was governed by the stringent "exceptional circumstances and compelling reasons" test. Since appellant failed to present evidence to satisfy this test, see *Commonwealth v. Scott*, 469 Pa. 258, 365 A.2d 140 (1976), the tape was not discoverable.

In light of our ruling based upon appellant's failure to timely present his discovery request, we need not determine the accuracy of the lower court's alternative ruling.

amendment right against self-incrimination and his sixth amendment right to counsel. As support for this contention he relies upon the seminal case of *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), while in its opinion the court below relies upon *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). In *Massiah*, the accused and an accomplice were arrested for possession of narcotics and released on bail. Upon release, the accomplice engaged Massiah in a conversation during which Massiah made damaging admissions. Unbeknownst to Massiah, the accomplice had agreed to co-operate with the authorities and the accomplice's automobile in which the conversation was conducted had been wired with a listening device. Consequently, the conversation was overheard by a government agent several blocks away. In holding that such a procedure violated Massiah's fifth and sixth amendment rights, the Court stressed that the interrogation occurred *after* Massiah had been arrested.

In *Hoffa*, the accused had been arrested and released on bail for certain activities regarding violations of federal labor laws. During the trial on those charges, Hoffa made incriminating statements to an informant to the effect that he was endeavoring to tamper with the jury in the ongoing trial. In holding that such information was not obtained in violation of his fourth, fifth or sixth amendments rights, the Court emphasized that the evidence was only admissible in the trial on the subsequent jury tampering charges because Hoffa had not been arrested for that charge at the time the statements were made.

In reviewing these precedents, we find the instant case to be controlled by the *Hoffa* principles, thereby mandating the admissibility of the tape. At the time Criniti engaged appellant in the conversation regarding the overtime checks, appellant was not under arrest. In fact, he was not even a prime suspect in the investigation, although he had been called to testify before the grand jury. (N.T. 624–25). Likewise, Criniti's purpose in visiting appellant was to obtain evidence that would exculpate Criniti, rather than to

obtain evidence that would incriminate appellant. Thus, appellant was in a position more like Hoffa than Massiah.

Appellant argues, however, that because he had testified before the grand jury and had retained counsel to advise him, he was denied his sixth amendment right to counsel by what he deems an interrogation by a government agent. We find this contention to be fatally flawed in two respects. First, the Supreme Court of the United States has established that the sixth amendment right to counsel attaches only at "critical stages." *United States v. Wade*, 388 U.S. 218, 224, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *cf. Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (probable cause hearing not a "critical stage"). Although Pennsylvania has recognized a very limited right to counsel during grand jury proceedings, *see Commonwealth v. Columbia Investment Corp.*, 457 Pa. 353, 325 A.2d 289 (1974); *Commonwealth v. McCloskey*, 443 Pa. 117, 277 A.2d 764, *cert. denied*, 404 U.S. 1000, 92 S.Ct. 560, 30 L.Ed.2d 552 (1971), the simple fact is that appellant was not before the grand jury when he made the incriminating statements to Criniti. Our research has failed to uncover, and appellant has failed to present, any cases defining the investigatory process as a "critical stage." Second, were we to adopt appellant's contention that the right to counsel attaches whenever a party retains counsel to render advice regarding potential legal problems, the use of informants or other means of investigation would be significantly curtailed. In essence, it would permit a suspect to hide behind a sixth amendment cloak by the mere payment of a token retainer to a legal adviser. Accordingly, appellant's contention is without merit.

## IV.

Appellant's tenth assignment of error is that he was denied his sixth amendment right of confrontation when the trial judge refused to allow appellant's counsel to review the grand jury testimony of Nicholas Criniti prior to his cross-examination of Criniti. Generally, the rule in this Common-

wealth is that, at trial, a defendant is permitted to secure the pre-trial statements of a Commonwealth witness, even those made to the grand jury, for use in cross-examining the witness. *Commonwealth v. Columbia Investment Corp., supra; Commonwealth v. Kelly*, 245 Pa.Super. 351, 369 A.2d 438 (1976). In the present case, the prosecution moved that appellant not be permitted to review the transcript since the testimony was unrelated to the facts of this case, and contained the name of an additional party who may have given evidence detrimental to appellant. After an *in camera* review, the lower court refused to release the transcript and informed appellant that the testimony was totally unrelated to the present case, and contained no information that would be of benefit to appellant in cross-examining Criniti. The lower court then sealed the transcript and included it in the record to this court.

Generally, the question whether prior testimony may be helpful in cross-examining a witness is a determination to be made by defense counsel. *Commonwealth v. Hamm*, 474 Pa. 487, 378 A.2d 1219 (1977). Whenever possible, trial judges are to exercise from the transcript any statements they deem necessary to protect the identity of any informants, rather than totally denying a defendant access to the testimony. *See Commonwealth v. Kelly, supra.* Therefore, we conclude that the better procedure would have been for the judge to permit appellant to utilize the transcript after deleting the references to the other informant. Although the court below did not provide this opportunity prior to the initial cross-examination of Criniti, the court did permit appellant's counsel to examine the unedited transcript prior to the conclusion of the trial, at a time when Criniti was available to be called as a witness.

In *Commonwealth v. Gartner*, 475 Pa. 512, 381 A.2d 114 (1977), the supreme court held under similar circumstances that if the transcript is made available to defense counsel prior to termination of the trial and at a time when the witness is available for questioning, this opportunity will vitiate any prejudice, even if the court refused to provide

the transcript at the time of the initial cross-examination of the witness. In the present case, the testimony was provided prior to termination of the trial and at a time when Criniti was still available for questioning. Accordingly, the action of the lower court does not present any reversible error.

## V.

Finally, appellant contends that the charges against him should be dismissed because he was not brought to trial within 180 days subsequent to the filing of the complaint as required by Pa.R.Crim.P. 1100(a)(2). The presentment of the investigating grand jury was returned on March 14, 1975; consequently, the run date for trial to commence was September 10, 1975. The case was called to trial on October 16, 1975, thirty-six (36) days after the run date. However, on August 29, 1975, twelve days prior to the run date, the Commonwealth filed a motion for extension of time. In its motion, the Commonwealth requested a continuance for forty-five (45) days and advanced the following reasons for the extension: (1) in response to a motion by appellant, the court below had refrained from trying the case pending the outcome of a different case in which the legality of the office of the special prosecutor had been challenged, *see* *Gwinn v. Kane*, 19 Pa.Cmwlth. 243, 339 A.2d 838 (1975); (2) the conflicting schedules of the various defense counsel would not permit trial prior to September 10, 1975; and (3) at a pre-trial hearing held on August 29, 1975, the lower court determined that the anticipated two week block of time necessary to try the case would not be available on the court calendar until October 14, 1975. The lower court granted the extension, but in its order merely stated "that the court is unable to set the [case] for trial within the 180 days provided in Section (a) of Rule 1100." The court did not establish its own record explaining the reasons for the delay.

In *Commonwealth v. Shelton*, 469 Pa. 8, 364 A.2d 694 (1976), and *Commonwealth v. Mayfield*, 469 Pa. 214, 364

A.2d 1345 (1976), the supreme court held that judicial delay may justify the granting of an extension under Rule 1100(c). However, in *Mayfield*, the court specifically ruled that the lower court must establish its own record showing "the causes of the court delay and the reasons why the delay cannot be avoided." 469 Pa. at 222, 364 A.2d at 1350. These requirements were not met in the court below. Although the "record" does establish three possible explanations for the delay, these explanations consist of the mere unsubstantiated assertions of the Commonwealth in its Motion to Extend. Moreover no transcript was made of the pretrial hearing on August 29, 1975. Accordingly, we remand the case to the lower court to determine whether the initial extension was based upon a proper finding of judicial delay or whether certain time may have been properly excluded from the computation based upon the unavailability of defense counsel or upon appellant's motion to stay the proceedings pending the outcome of *Gwinn v. Kane, supra.*

SPAETH, J., concurs in the result.

JACOBS, former President Judge, WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.