STATE of Missouri,
Plaintiff-Respondent,

v.

Thomas CHARITY, Defendant-Appellant.

No. 12416.

Missouri Court of Appeals,
Southern District,
Division Two.

July 7, 1982.

Motion for Rehearing or to Transfer Denied
July 26, 1982.

Application to Transfer Denied
Sept. 13, 1982.

Michael Baker, Springfield, for defendant-appellant.

John Ashcroft, Atty. Gen., William K. Haas, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

MAUS, Chief Judge.

The defendant was charged with the class C felony of promoting prostitution in the second degree by controlling a prostitution

enterprise involving two or more prostitutes. He was found guilty by a jury and sentenced to seven years' imprisonment. By astute counsel he presents eight points of alleged error by the circuit court.

By one of those points the defendant asserts the circuit court erred in failing to quash the information because the same violated designated sections of the Constitution of the United States and the State of Missouri. The point further states the conduct prohibited is so broadly defined as not to properly state what is prohibited and to interfere with freedom of speech. He adds that the "conduct prohibited by the statute and charged in the information is so broad and vague" to not adequately apprise the defendant of the crime with which he was charged.

Even though the defendant acknowledged this court has jurisdiction of this appeal, this point requires this court to determine if that is true. If this case involves the validity of a statute of this state in the constitutional sense, this court does not have jurisdiction of the appeal. Art. 5, § 3, Mo.Const., as amended 1976. However, the mere assertion of statutory invalidity does not deprive this court of appellate jurisdiction. *Little River Drainage Dist. v. Houck,* 282 Mo. 458, 222 S.W. 384 (banc 1920). "In order to deprive this court of appellate jurisdiction the constitutional question must be real and substantial and not merely colorable." *Forbis v. Associated Wholesale Grocers, Inc.,* 513 S.W.2d 760, 767 (Mo.App.1974).

A claim of violation of a constitutional guaranty may be said to be substantial when, upon preliminary inquiry, the contention discloses a contested matter of right, involving some fair doubt and reasonable room for controversy; but, if such preliminary inquiry discloses that the contention is so obviously unsubstantial and insufficient, either in fact or in law, as to be plainly without merit and a mere pretense, the claim may be deemed to be merely colorable. *State v. Egan,* 272 S.W.2d 719, 725 (Mo.App.1954).

This point of the defendant does not remove this appeal from the jurisdiction of this court. A motion alleging that an information is void for lack of specificity does not raise a constitutional issue. *State v. Hale,* 248 S.W. 958 (Mo.1923). Also, in view of the defendant's limited attack and the authorities upholding that part of the Missouri Criminal Code in question, such as *Caesar's Health Club v. St. Louis County,* 565 S.W.2d 783 (Mo.App.1978), cert. denied, 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978); *J.B.K., Inc. v. Caron,* 600 F.2d 710 (8th Cir. 1979), if the motion could be said to raise the validity of the statute, the contention is merely colorable and not substantial. *Caesar's Health Club,* supra, and *J.B.K., Inc.,* supra, also clearly establish the defendant's attack upon the specificity of the information is ill founded.

The defendant makes a limited attack upon the sufficiency of the evidence and the sufficiency of the evidence to support the verdict directing instruction. In considering those points this court must view the evidence in the light most favorable to the state, accept all substantial evidence and all legitimate inferences fairly deductible therefrom tending to support the verdict and reject contrary and contradictory evidence. *State v. Petrechko,* 486 S.W.2d 217 (Mo.1972). When so considered, the evidence established the following general facts.

Through a manager, the defendant operated the Aquarius Massage Parlor in Joplin. Upon entering the establishment a customer was told of the types of massages available and the prices. The females on duty were displayed and the customer selected his masseuse. Initially the customer was told no sex was available, but in the "backroom" he learned sex was available for an additional charge. The defendant paid the females a net of approximately $89 per week. If a customer desired sex an additional charge was negotiated by the masseuse and she received the additional charge. The masseuses were told not to charge less than an additional $20 for sex. The one female who was asked about it said

she had made in excess of $2,000 per week. Another said she gave the defendant part of her "tips." The females were instructed to have sex only if the customer had paid for one of the higher priced massages, such as a "one-girl nude," price $40. If a customer desiring sex had not paid such an amount to the front desk, he had to do so before sex was permitted. A female who violated this rule would be fired.

The defendant's attack is that there was no evidence that during the period charged of August 1, 1979, to October 1, 1979, two or more females engaged in prostitution activity at the Aquarius. The first female who testified said she plied her trade at the Aquarius from February, 1978, to July, 1979. She explained in detail the operation of the business. The next witness testified that he managed the business for the defendant from July, 1977, to January, 1980. He stated that typically the business was staffed with three females in the daytime and five females at night. He confirmed the operation of the business in the manner detailed by the first witness. The second female witness specifically testified that she worked as a prostitute in the manner detailed at the Aquarius during the period in question. In this connection, she stated "[t]he only thing he told *us* not to have sex on anything less than one-girl nude." (Emphasis added). A third female was called by the defendant. She stated she worked as a prostitute at the Aquarius from 1976 or 1977 to an undisclosed date, but the defendant did not know she engaged in prostitution. The testimony of the manager and the other two females provide a credible basis from which the jury could find the defendant had full knowledge of all activities at the Aquarius, contrary to the defendant's contention. That testimony is also a basis for the jury to conclude that two or more females worked as prostitutes at the Aquarius from August 1, 1979, to October 1, 1979. This is emphasized by the testimony of the manager concerning a typical staff. Any doubt is removed by the manager's testimony that on August 9, 1979, he fired a female, not the one that testified, who engaged in sex with a customer who had paid the management for only a $20 massage.

The defendant's next two points are based upon an alleged nondisclosure by the state. On April 7, 1980, the defendant filed in the associate division of the circuit court a request for disclosure. While the request did not specifically mention Rule 25.03, it did request disclosure substantially as outlined in that rule. Thereafter, the defendant waived a preliminary hearing and was bound over to the circuit court. The transcript was filed in the circuit court on April 24, 1980. Thereafter, on May 13, 1980, the information was filed in the circuit court. On April 6, 1981, seven days before the case was for trial, the defendant filed in the circuit court a motion to compel disclosure. The motion was overruled. During the trial, the defendant objected to the state's witnesses testifying because the state had not disclosed their names and addresses, their police records and any statements given to the state. The court overruled these objections. The names of the witnesses were endorsed upon the information. The trial examination of these witnesses revealed only that one had misdemeanor charges in Arkansas that were dropped and another had given a statement to the state. Other than this, there is no showing in the record concerning what a disclosure by the state would have revealed.

By these two points the defendant argues the trial court committed reversible error because he was entitled to disclosure under Rule 25.03 and because the absence of disclosure caused his trial to be fundamentally unfair and deprived him of his constitutional right to due process. To support this argument he asserts that disclosure probably would have revealed information by which he could have effectively impeached the state's witnesses.

By the latter part of his argument, the defendant is apparently referring to the doctrine against the suppression of evidence by the state enunciated in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and further developed in *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Also see *State v.*

*Collor*, 502 S.W.2d 258 (Mo.1973); *State v. Bebee*, 577 S.W.2d 658 (Mo.App.1979); *Lee v. State*, 573 S.W.2d 131 (Mo.App.1978). However, in making this argument the defendant has failed to distinguish between the duty of the state to disclose under Rule 25.03 and under the doctrine of *Brady*. The distinction is noted in *State v. Thompson*, 610 S.W.2d 629 (Mo.1981). While disclosure under Rule 25 has constitutional underpinnings, *State v. Wilkinson*, 606 S.W.2d 632 (Mo. banc 1980), its purpose is also to allow a party to prepare for trial and eliminate surprise. Simeone, The New Rules of Criminal Discovery in Missouri, 31 Mo.Bar Journal 16 (1975). The scope of materials subject to disclosure under Rule 25 is broader than under the *Brady* doctrine. There is also a difference in the procedure by which defendant creates a duty for the state to disclose under Rule 25.03 and the proof necessary to establish there was a duty for the state to disclose under the *Brady* doctrine.

■ Rule 25 clearly provides that discovery *may commence* upon the filing of the indictment or information, Rule 25.02, that a request for discovery shall be filed in the court having jurisdiction to try the case, Rule 25.03(B), not later than 20 days *after* arraignment in that court, Rule 25.02. (Emphasis added). Contrary to the defendant's contention, these rules were not complied with when the defendant filed a request for disclosure in the associate division of the circuit court. Nor was there compliance when the transcript of the proceedings in the associate division was filed in the circuit court.

■ Nevertheless, the defendant argues the circuit court erred because the failure of the state to make disclosure caused his trial to be fundamentally unfair. If the state fails to make disclosure when required by the rule, the test adopted for determining the sufficiency of the sanctions imposed by the trial court is "whether the failure to disclose resulted in fundamental unfairness or prejudice to defendant." *State v. Smothers*, 605 S.W.2d 128, 131 (Mo. banc 1980), cert. denied 450 U.S. 1000, 101 S.Ct. 1708, 68 L.Ed.2d 203 (1981). Also see *State v. White*, 621 S.W.2d 287 (Mo.1981).

However, when so applied, the test is concerned with the effect of specific evidentiary material. The general statement of the test cannot be used to establish that a defendant who does not comply with the Rule is entitled to disclosure under the Rule. To hold otherwise would erode the limitations of the Rule. *Com. v. Brocco*, 263 Pa.Super. 51, 396 A.2d 1371 (1979). The trial court did not abuse its discretion in holding that the misfiled request did not create a duty upon the state to make disclosure under Rule 25.03. *State v. Scott*, 491 S.W.2d 514 (Mo. banc 1973); *State v. Haslip*, 583 S.W.2d 225 (Mo.App.1979); *State v. Lightle*, 210 Kan. 415, 502 P.2d 834 (1972). Compare *State v. Polito*, 146 N.J.Super. 552, 370 A.2d 478 (1977).

■ However, the failure of the defendant to establish a duty upon the state to make disclosure under Rule 25.03 does not foreclose consideration of the duty of the state to make disclosure under the *Brady* doctrine. *State v. Bebee*, supra; *Lee v. State*, supra. However, the defendant did not by witnesses, subpoena duces tecum or otherwise at the hearing upon the motion for disclosure or the motion for new trial show the evidence allegedly not disclosed. *State v. Leigh*, 580 S.W.2d 536 (Mo.App. 1979). A right to relief under the *Brady* doctrine cannot be established by showing an untimely request under Rule 25 followed by speculation upon what that disclosure might have revealed. *State v. Thompson*, supra; *State v. Collor*, supra; *State v. Tressler*, 503 S.W.2d 13 (Mo.1973). The two points based upon non-disclosure are denied.

■ The defendant then contends the circuit court erred in not instructing on the lesser included offense of patronizing a prostitute. This contention ignores § 567.-010(1) which in part reads: " 'Promoting prostitution', a person 'promotes prostitution' if, acting *other than as a* prostitute or a *patron* of a prostitute, he knowingly (a) Causes or aids a person to commit or engage in prostitution . . . ." (Emphasis added). Patronizing a prostitute is not a lesser included offense of promoting prostitution.

■ The verdict directing instruction was MAI–CR2d 21.08 which required the

jury to find the defendant "promoted prostitution by controlling a prostitution enterprise involving prostitution activity by two or more prostitutes .... " § 567.010. In addition, the circuit court gave an instruction defining promoting prostitution in the terms of § 567.010(1). The objections the defendant now lodges against these instructions are not contained in his motion for a new trial. Rule 28.03. They may be reviewed only as plain error. Rule 29.12. The defendant argues there was error in giving the instruction defining promoting prostitution because it is not authorized by the *Notes on Use* to MAI–CR2d 21.08 and, as the court failed to define the term prostitution, the instruction gave the jury a roving commission to convict the defendant.

An analysis of Chapter 567 and the Comments to the 1973 proposed Criminal Code reveals that § 567.010(1) contains an overall definition of promoting prostitution. Sections 567.050 and 567.060 carve out of that overall definition the promotion of prostitution by what may be termed in an aggravated manner. The verdict directing instruction clearly required the jury to find the defendant committed the offense of promotion of prostitution in the aggravated manner declared by § 567.060 to constitute promotion of prostitution in the second degree. Even though the general definition of promoting prostitution was contrary to MAI–CR2d 33.00, Note on Use 8, under Rule 28.02(e) it is determined that it was not prejudicial to the defendant. It did not misdirect the jury or fail to instruct the jury so as to cause a manifest injustice or miscarriage of justice as required by Rule 29.12(b). *State v. Cass*, 614 S.W.2d 784 (Mo.App.1981). This point must fail for the further reason the court in fact by its instruction No. 10 defined prostitution as set forth in MAI–CR2d 33.01.

The defendant's final point concerns a cross examination by the state. On direct examination a witness testified she had sex at the Aquarius, but the defendant did not know this and he told them and they signed contracts that if they had sex at the Aquarius they would be fired. On cross examination she denied she told an officer she charged money, denied she told him the defendant knew this, but then testified "I really don't remember what I said." The defendant contends that when the state did not call the officer in rebuttal the circuit court should have declared a mistrial. There are circumstances in which cross examination in reference to a statement may be prejudicially suggestive. However, by her evasive answer the witness virtually rendered rebuttal unnecessary. This is not such a case. *United States v. Cardarella*, 570 F.2d 264 (8th Cir. 1978). Further, had the defendant requested a mistrial, the granting of that drastic remedy would have been within the discretion of the trial court. The circuit court did not abuse its discretion because it "did not see fit to invoke any curative measures sua sponte." *State v. Sykes*, 571 S.W.2d 456, 459 (Mo.App.1978). The defendant did not by objection, motion, or motion for a new trial preserve this alleged error for review. Since the failure of the trial court to sua sponte declare a mistrial was not error, it certainly cannot be error under Rule 29.-12(b). The judgment is affirmed.

PREWITT, P. J., and BILLINGS, J., concur.