515 A.2d 564

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Thomas DeBLASE, Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 5, 1986.

Filed Sept. 22, 1986.

Mary A. Killinger, Assistant District Attorney, Norristown, for Com., appellant.

Henry T. Crocker, Pottstown, for appellee.

Before WICKERSHAM, McEWEN and JOHNSON, JJ.

JOHNSON, Judge:

We are asked to decide whether the Pennsylvania Wiretap Act [1] permits an exception for the unauthorized interception of telephone conversations where the person who made the tape recordings was subsequently murdered. We are also asked to determine whether the sixth amendment right to counsel attaches to the pre-arrest use of a consensual body wire on the particular facts presented in this case. We find no justification for an exception to the Wiretap Act and affirm the suppression of the taped telephone conversations. We find that the sixth amendment right to counsel did not attach since adversary judicial criminal proceedings had not yet been initiated. Accordingly, we reverse that portion of the lower court order which suppressed the tape recordings made as a result of the body wire.

1. Wiretapping and Electronic Surveillance Control Act. Act of October 4, 1978, P.L. 831, No. 164; 18 Pa.C.S. § 5701 *et seq.* (Pennsylvania Wiretap Act).

This case is an appeal from a suppression order. Testimony presented at a pre-trial hearing established the following facts. Millionaire real-estate developer David Swinehart was murdered in January of 1982. Prior to his death he installed a line-activated tape recorder on his estranged wife's private telephone line in order to obtain evidence for use in a divorce proceeding. The tape recordings document an illicit tryst between Mrs. Swinehart and Swinehart's 23 year old nephew. The tapes were obtained from three sources: Swinehart's car, his lawyer and from the recorder itself by the police after the killing based on information from Swinehart's girlfriend.

Swinehart's nephew, Thomas DeBlase, is the appellee in this case. He was questioned at Borough Hall by police following the murder and advised of his *Miranda* rights. He denied involvement in or knowledge of the murder but admitted to his romantic liaison with Mrs. Swinehart. Appellee expressed the desire to consult with counsel before further questioning and was released. He was questioned on a second occasion, following *Miranda* warnings, and he denied involvement in the murder. Following this, and before the end of January 1982, appellee took a polygraph test. In April of 1982 appellee appeared with counsel before an investigating grand jury. Appellee was not indicted or arrested at that time.

From November 1983 to March 1984 appellee's brother Jeffrey DeBlase cooperated with the Commonwealth and wore a body wire when he talked with appellee. A number of the conversations between Jeffrey and Thomas DeBlase were recorded. Appellee was not arrested at that time.

Rather, the Commonwealth did not move against appellee until May of 1985. Additional information was supplied by one Arthur Hall, who asserted that he had been present at the murder. Based on this information, appellee was arrested and charged on May 11, 1985 with the murder of his uncle, David Swinehart.

Appellee moved to suppress the tapes of the conversations between himself and Mrs. Swinehart, as well as the

conversations taped by the police when appellee's brother was wearing a body wire. The lower court received testimony and heard argument. The court entered an order granting the suppression of the contents of tape recordings of Mrs. Swinehart's conversations with appellee, as well as the contents of the tape recordings made as a result of the body wire worn by Jeffrey DeBlase. The court denied suppression of the statements appellee made to police.

The Commonwealth appeals from the order granting the suppression and advances two arguments: 1) that reason and justice require that, within the narrow limits of the facts presented in the case, statements obtained as the result of the wiretap of Mrs. Swinehart's phone should be admissible as evidence during the prosecution of a first degree murder case, and 2) that since defendant had not been arrested and no critical stage of the prosecution was involved, the right to counsel did not attach. Accordingly, the Commonwealth believes that the statements obtained as a result of the consensual body wire should be admissible against the defendant at every stage of the trial.

We find no merit in the Commonwealth's first argument regarding the taped conversations of Mrs. Swinehart and appellee. The Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. § 5701 *et seq.*, clearly prohibits the kind of activity in which Swinehart was engaged. The Act provides that a person is guilty of a third degree felony if he willfully intercepts any wire or oral communication. 18 Pa.C.S. § 5703. Wire communications include telephone conversations, such as the one here at issue. 18 Pa.C.S. § 5702. The person whose communication is intercepted in violation of the Act has a civil cause of action against the person who intercepted the communication. 18 Pa.C.S. § 5725. At any trial, hearing or adversary proceeding the person whose conversation is intercepted may move to suppress the contents of the intercepted communication. 18 Pa.C.S. § 5721.

■ The Commonwealth concedes that Swinehart "may" have been subject to criminal proceedings and a civil action for damages for recording the conversations. The Commonwealth asks this Court to create a public policy exception to the Act because the person who violated the Act was murdered. Such an exception is not provided for in the express language of the Act nor do we find that such an exception would be in keeping with the overall structure and provisions of the Act. The communications were intercepted in violation of the Act and were properly suppressed by the trial court.

The Commonwealth's second argument is that appellee was not entitled to suppression due to a violation of his right to counsel. The Commonwealth argues that appellee's right to counsel did not attach when the body wire was used since appellee had not yet been arrested and this was not a critical stage in the prosecution. We agree with the Commonwealth and, accordingly, find this evidence to be admissible.

■ We note that the conversations obtained through the use of the body wire are not in violation of the Wiretap Act. The police followed the procedures established in section 5704 for the interception. 18 Pa.C.S. § 5704. One of the parties to the communication, Jeffrey DeBlase, consented to the interception in advance. The First Assistant District Attorney of Montgomery County was officially designated by the District Attorney, and reviewed the police request for the body wire and the consent of Jeffrey DeBlase. The Assistant District Attorney determined that the consent was freely and voluntarily given and issued prior approval for the interception.

We now address the constitutional issue raised with respect to the body wire. The right to the assistance of counsel is guaranteed under the sixth and fourteenth amendments to the United States Constitution. The United States Supreme Court explained the rationale for this guarantee in *Maine v. Moulton*, 474 U.S. ——, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985). The Court stated:

The right to the assistance of counsel guaranteed by the Sixth and Fourteenth Amendments is indispensable to the fair administration of our adversarial system of criminal justice. Embodying "a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself," *Johnson v. Zerbst*, 304 U.S. 458, 462–463, 82 L.Ed. 1461, 58 S.Ct. 1019, 146 ALR 357 (1938), the right to counsel safeguards the other rights deemed essential for the fair prosecution of a criminal proceeding.

*Id.*, 474 U.S. at ——, 106 S.Ct. at 483–84, 88 L.Ed.2d at 491 (footnote omitted).

Important to the issue before this Court is establishing when the sixth amendment right attaches. In *Maine v. Moulton*, the Court stated that right is not limited only to the participation of counsel at trial:

Recognizing that the right to the assistance of counsel is shaped by the need for the assistance of counsel, we have found that the right attaches at earlier, "critical" stages in the criminal justice process "where the results might well settle the accused's fate and reduce the trial itself to a mere formality." *United States v. Wade*, 388 U.S. 218, 224, 18 L.Ed.2d 1149, 87 S.Ct. 1926 (1967) (quoted in *United States v. Gouveia*, 467 U.S. 180, 189, 81 L.Ed.2d 146, 104 S.Ct. 2292 (1984)).

*Id.* 474 U.S. at ——, 106 S.Ct. at 484, 88 L.Ed.2d at 492.

Indeed, in *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) the Court stated that, "it has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him." *Id.*, 406 U.S. at 688, 92 S.Ct. at 1881, 32 L.Ed.2d at 417 (citations omitted). The Court explained the reason for this:

The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prose-

cute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the "criminal prosecutions" to which alone the explicit guarantees of the Sixth Amendment are applicable.

*Id.*, 406 U.S. at 689–90, 92 S.Ct. at 1882, 32 L.Ed.2d at 417–18 (footnote omitted) (citations omitted). The initiation of adversary judicial criminal proceedings can be "by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Id.*, 406 U.S. at 689, 92 S.Ct. at 1882, 32 L.Ed.2d at 417.

In *Michigan v. Jackson*, 475 U.S. ——, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986) the Court stressed the impact which the attachment of the sixth amendment right has upon the propriety of police investigatory procedures. The court stated:

Indeed, after a formal accusation has been made—and a person who had previously been just a "suspect" has become an "accused" within the meaning of the Sixth Amendment—the constitutional right to the assistance of counsel is of such importance that the police may no longer employ techniques for eliciting information from an uncounseled defendant that might have been entirely proper at an earlier stage of their investigation. Thus, the surreptitious employment of a cellmate, see *United States v. Henry*, 447 U.S. 264, 65 L.Ed.2d 115, 100 S.Ct. 2183 (1980), or the electronic surveillance of conversations with third parties, see *Maine v. Moulton, supra; Massiah v. United States*, 377 U.S. 201, 12 L.Ed.2d 246, 84 S.Ct. 1199 (1964), may violate the defendant's Sixth Amendment right to counsel even though the same methods of investigation might have been permissible before arraignment or indictment.

*Id.*, 475 U.S. at ——, 106 S.Ct. at 1409, 89 L.Ed.2d at 639–40 (footnote omitted). Thus, investigatory methods which

would yield constitutionally inadmissible evidence when used after the sixth amendment right to counsel has attached, may be used before the right attaches.

This principle is clearly applied by the Court in *Maine v. Moulton, supra.* In that case the defendant Moulton and his co-defendant Colson were indicted on various counts of theft. Colson confessed to police without telling Moulton. Colson agreed to testify against Moulton and to cooperate in the prosecution of Moulton if the authorities would bring no further charges against Colson. One of the ways in which Colson assisted the police was to wear a body wire transmitter to a pre-arranged meeting with Moulton. The police sought to record conversation concerning threats to witnesses and were aware that the theft charges would be discussed. The police in fact obtained inculpatory statements by Moulton and these were admitted into evidence against Moulton at trial. The Court stated that "By concealing the fact that Colson was an agent for the State, the police denied Moulton the opportunity to consult with counsel and thus denied him the assistance of counsel guaranteed by the Sixth Amendment." *Maine v. Moulton,* 474 U.S. at ——, 106 S.Ct. at 488, 88 L.Ed.2d at 497 (footnote omitted). A key factor in the Court's analysis is that formal charges had already been filed against Moulton. The court distinguished between incriminating statements concerning charges which had already been filed against Moulton and statements concerning charges which had not yet been filed. The Court explained:

> incriminating statements pertaining to pending charges are inadmissible at the trial of those charges, notwithstanding the fact that the police were also investigating other crimes, if, in obtaining this evidence, the State violated the Sixth Amendment by knowingly circumventing the accused's right to the assistance of counsel.[16]
>
> [16] Incriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses.

*Id.,* 474 U.S. at ——, 106 S.Ct. at 489–90, 88 L.Ed.2d at 498–99.

In *Commonwealth v. Brocco*, 263 Pa.Super. 51, 396 A.2d 1371 (1979) this Court dealt with the sixth amendment right to counsel. Brocco was convicted of a conspiracy involving the theft and forgery of paychecks in the Pennsylvania Department of Transportation. Prior to the conviction and before Brocco was even a prime suspect or was arrested, a co-worker, Criniti, was among those employees under investigation for involvement in the affair. Criniti contacted the police in order to establish his lack of involvement. He allowed the police to fit him with a listening device which he wore to Brocco's office. Brocco made incriminating statements, and a tape of these statements was played at Brocco's trial. This Court found that the admission of the taped statements was not a violation of the sixth amendment. This Court followed the United States Supreme Court pronouncement that the sixth amendment right to counsel attaches only at "critical stages". Brocco had not yet been arrested, let alone arraigned. The taped statements were made during the pre-arrest investigatory process, which was not a critical stage. While Brocco was represented by counsel when he testified before the grand jury, Brocco was not before the grand jury when he spoke with Criniti. Thus, we found no violation of the sixth amendment.

Here, appellee had been called before a grand jury and was represented by counsel at that time. The inculpatory statements made to appellee's brother were made after appellee's appearance at the grand jury and prior to his arrest. When the conversations were taped appellee was not under indictment. The adversary judicial proceedings against appellee had not been formally commenced, nor were they commenced until well over one year later. The contents of the tape recording made as a result of body wires worn by Jeffrey DeBlase after the Swinehart murder and prior to either brother's arrest were not obtained in violation of appellee's sixth amendment right to counsel. Accordingly, we reverse the portion of the October 15, 1985 order which suppressed these tapes.

■ We are in agreement with our esteemed colleague, Judge McEwen, that Pennsylvania may recognize a more expansive right to counsel under its own constitution than is provided under the federal constitution. However, appellee has raised no issue of state constitutional protection. The basis upon which appellee requested suppression in his original and supplemental motions to suppress, was the federal constitution. He has not argued that his state constitutional rights have been violated either in the memorandum he submitted to the lower court or in his brief to this Court. Accordingly, we do not see an issue of state constitutional rights as being properly before us.

No issue has been raised as to the portion of the October 15, 1985 order which denies suppression of appellee's statements to police. Accordingly, that portion of the order is affirmed.

Order reversed in part, affirmed in part. Case remanded.

McEWEN, J., files a concurring and dissenting opinion.

McEWEN, Judge, concurring and dissenting:

I agree with my eminent colleagues of the majority that the recorded conversations between appellee and Mrs. Swinehart must be suppressed. And, to be sure, the majority opinion provides a quite perceptive analysis of the principles that lead them to conclude that the tapes obtained by recording the conversations between appellee and his brother are admissible. However, I am of a mind that the learned Judge Horace A. Davenport correctly found that the conduct of the police required that the recorded conversations between appellee and his brother should be suppressed.

There was at least a faint shadow upon appellee at the time of his first interview by the police soon after the murder, since the police questioned him only after they had advised him of his Miranda rights. On that occasion, after he denied any knowledge of the murder, he exercised his

right to consult with counsel before any further interrogation and was, as a result, released. The shadow continued to hover, since, very shortly thereafter at the time of his second interview by police, Miranda warnings were again provided. In fact, the shadow loomed larger as, a few weeks after the crime, the police administered a polygraph test to him. Several months later, in April of 1982, appellant received a "target letter", summoning him before the grand jury and advising him again of his right to counsel. Appellant did appear before the investigating grand jury and did so represented by counsel.

Almost two years after the crime, the brother of appellee agreed to become an informer for the police and to wear electronic eavesdropping equipment to enable the police to record conversations between the brothers, in the hope, of course, that the informer brother would be able to elicit incriminating statements from the suspect brother. They achieved their objective since appellant's brother did, in fact, utilize the electronic device to secretly record incriminating conversations with appellant between November of 1983 and March of 1984.

As the majority quite correctly states, federal constitutional law provides that the Sixth Amendment right to assistance of counsel attaches not only at trial but at 'critical stages' of the prosecution which occur before trial. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

> The arraignment signals 'the initiation of adversary judicial proceedings' and thus the attachment of the Sixth Amendment ...; thereafter, [law enforcement] efforts to elicit information from the accused, including interrogation, represent 'critical stages' at which the Sixth Amendment applies.

*Michigan v. Jackson,* —— U.S. ——, ——, 106 S.Ct. 1404, 1407–1408, 89 L.Ed.2d 631, 638, (1986).

However, the fact that the United States Supreme Court has refused to recognize a Sixth Amendment right to counsel in any pre-indictment situation does not foreclose this

Court from finding that such a right exists under our state constitution in certain situations or under certain circumstances.

It is well settled that a state may provide through its constitution a basis for the rights and liberties of its citizens independent from that provided by the Federal Constitution, and that the rights so guaranteed may be more expansive than their federal counterparts. *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 80–82, 100 S.Ct. 2035, 2040–41, 64 L.Ed.2d 741 (1980); *see Oregon v. Hass*, 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570 (1975); *Cooper v. California*, 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730 (1967). *See also Commonwealth v. Ware*, 405 U.S. 987, 92 S.Ct. 1254, 31 L.Ed.2d 453, subsequently vacated and denied, 406 U.S. 910, 92 S.Ct. 1606, 31 L.Ed.2d 821 (1972) ("it appearing that the judgment below rests upon an adequate state ground"). *See generally Brennan*, State Constitutional & The Protection of Individual Rights, 90 Harv.L.Rev. 489, 503 (1977). This Court has on numerous occasions recognized the Pennsylvania Constitution to be an alternative and independent source of individual rights. *See e.g. Willing v. Mazzocone*, 482 Pa. 377, 393 A.2d 1155 (1978); *Commonwealth v. Triplett*, 462 Pa. 244, 341 A.2d 62 (1975); *Commonwealth v. Knowles*, 459 Pa. 70, 73 n. 3, 327 A.2d 19, 20 n. 3 (1974); *Commonwealth v. Platou*, 455 Pa. 258, 312 A.2d 29 (1973), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974); *Goldman Theatres Inc. v. Dana*, 405 Pa. 83, 173 A.2d 59 *cert. denied*, 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961).

*Commonwealth v. Tate*, 495 Pa. 158, 167–171, 432 A.2d 1382, 1387–1388 (1981). *See also: Commonwealth v. Sell*, 504 Pa. 46, 63–65, 470 A.2d 457, 467 (1983); *Commonwealth v. Bussey*, 486 Pa. 221, 230–31, 404 A.2d 1309, 1314 (1979); *Commonwealth v. DeJohn*, 486 Pa. 32, 44–45, 403 A.2d 1283, 1289 (1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 704, 62 L.Ed.2d 668 (1980); *In Re Gartley*, 341 Pa.Super. 350, 372–73, 491 A.2d 851, 863 (1985); *Commonwealth v.*

*Heck,* 341 Pa.Super. 183, 216–17, 491 A.2d 212, 229 (1985); *Western Pennsylvania Socialist Workers 1982 Campaign v. Connecticut General Life Insurance Co.,* 335 Pa.Super. 493, 499–500, 485 A.2d 1, 4 (1984); *Commonwealth v. Beauford,* 327 Pa.Super. 253, 262–65, 475 A.2d 783, 788–789 (1984); *Commonwealth v. Walsh,* 314 Pa.Super. 65, 73–75, 460 A.2d 767, 771 (1983).

Thus, whether the United States Supreme Court would conclude that the conduct of the police in the instant case did not violate any right guaranteed to appellant by the United States Constitution does not preclude a finding by this Court or by the Pennsylvania Supreme Court that such conduct violated rights guaranteed by the Pennsylvania State Constitution.

As the majority has observed, this Court in *Commonwealth v. Brocco,* 263 Pa.Super. 51, 68, 396 A.2d 1371, 1379 (1979), reaffirmed the position that Pennsylvania does not recognize the pre-arrest investigatory process as a 'critical stage'. The *Brocco* Court concluded that the appellant's Sixth Amendment rights had not been violated when his conversation was secretly taped by a co-worker. However, Brocco was not a prime suspect in the investigation and his co-worker's purpose in acting as an agent of the police in eliciting admissions from Brocco was to obtain evidence to *exculpate* himself, not to incriminate Brocco. *Id.,* 263 Pa. Superior Ct. at 68, 396 A.2d at 1379. The *Brocco* Court reasoned that if it were "to adopt appellant's contention that the right to counsel attaches whenever a party retains counsel to render advice regarding potential legal problems, the use of informants or the means of investigation would be significantly curtailed. In essence, it would permit a suspect to hide behind a Sixth Amendment cloak by mere payment of a token retainer to a legal adviser." *Commonwealth v. Brocco, supra,* 263 Pa.Superior Ct. at 66–70, 396 A.2d at 1379–1380.

The facts of the instant case and the conduct engaged in by law enforcement officials clearly distinguish this case

from the situation in *Brocco*. Nor does this case present any of the dangers which the Court foresaw there.

I would find that the introduction of the secretly recorded admissions elicited from appellant by his brother at the instigation of police, after appellant (1) had invoked his right not to be questioned in the absence of counsel, (2) had been targeted as the prime suspect in the investigation, and (3) had appeared with counsel before the investigating grand jury, violated rights guaranteed to appellant by the Pennsylvania Constitution. I, therefore, respectfully, dissent.