## Commonwealth *v.* Goldberg, Appellant.

514

Argued September 13, 1966. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Morris Paul Baran,* with him *Harry D. Sporkin,* and *Sporkin and Baran,* for appellant.

*Gordon Gelfond,* Assistant District Attorney, with him *John A. McMenamin* and *Alan J. Davis,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY WRIGHT, J., November 17, 1966:

Marvin Goldberg was indicted in the Court of Quarter Sessions of Philadelphia County on Bill No. 200 August Sessions 1965 charging the interception of telephone communications and the installation of a device for that purpose. Goldberg entered a plea of not guilty and waived jury trial. He was found guilty by the

hearing judge. Motions in arrest of judgment and for a new trial were overruled, and sentence was imposed. This appeal followed.

The record discloses that appellant resided with his wife at 9380 Hoff Street in the City of Philadelphia. A telephone had been installed at that address, and was listed in appellant's name as the subscriber. On May 10, 1965, upon investigation at the complaint of appellant's wife, a security agent of the Bell Telephone Company discovered a foreign wire leading from the telephone connection in the basement to an adjacent shed. Inside this shed the wire was attached to a pair of earphones. The agent testified that this device constituted a wire-tap, one of the terminals of which had been disconnected. "As I found it, it was not able to be used". The brother of appellant's wife testified that, on April 17, 1965, appellant "told me that he had bugged his phone and he was listening in to my sister's conversations". After the Commonwealth rested its case, a demurrer to the evidence was overruled. Appellant did not take the stand, but did adduce the testimony of several character witnesses. A motion for a directed verdict was denied.

The statute upon which the indictment was based is the Act of July 16, 1957, P. L. 956, 15 P.S. 2443, reading in pertinent part as follows: "No person shall intercept a communication by telephone or telegraph without permission of the parties to such communication. No person shall install or employ any device for overhearing or recording communications passing through a telephone or telegraph line with intent to intercept a communication in violation of this act. No person shall divulge or use the contents or purport of a communication intercepted in violation of this act".

This statute has been extensively analyzed in opinions recently filed in *Commonwealth v. Murray*, 423 Pa. 37, 223 A. 2d 102. That decision prohibits the use

of incriminating evidence obtained by a private detective "from the transcript of the illegally installed wiretape recording". It is our view that the *Murray* case does not dictate an affirmance in the case at bar.

The title of the statute states its purpose to be the prohibition of "unauthorized" interception, divulgence or use of telephone communications. We interpret this language to exclude interceptions for a rightly paramount purpose by the subscriber himself. In the instant case the telephone service was subscribed for by the appellant, and he had a paramount right to its supervision. An analogous situation was presented in *People v. Appelbaum,* 277 App. Div. 43, 97 N.Y.S. 2d 807, affirmed 301 N.Y. 738, 95 N.E. 2d 410. In that case the defendant arranged for a tap on the telephone maintained by him in his home, and recorded certain messages disruptive of his marital status. He was charged with violating a similar New York statute. The conviction was reversed in an opinion from which we quote the following relevant excerpt:

"The protection of a right of privacy may be subordinated where the circumstances disclose the existence of a paramount right and the use of a telephone line is with the permission of and subordinate to the possessor of that paramount right. Such a paramount right is possessed by the subscriber to a telephone line. When such a subscriber consents to the use of his line, by his employee or by a member of his household, or by his wife, there is a condition implied that the telephone will not be used to the detriment of the subscriber's business, household or marital status. Or the use may be expressly made the subject of such a condition or conditions. In such situations the subscriber may determine if his line is being used to his detriment by those whom he permits to use it. To this end he may have his own line tapped or otherwise checked so that his business may not be damaged, his household rela-

tions impaired or his marital status disrupted. When a subscriber exercises this paramount right, the one using the line subject to the implied conditions stated, is using it with the presumed understanding that his otherwise inviolate right of privacy to that extent may be invaded. Such a view preserves the paramount right of the subscriber to determine whether or not a basis exists for discipline in his business, in his household, or for action to protect his marital status.

"Such an interpretation of the statute avoids the absurdity of an accusation that one has committed a crime, as against third persons using his telephone line with his permission, when he has his own line tapped to determine whether such use is being made contrary to his express or implied directions. A subscriber has an absolute right to record his own communications and to protect the use made of his own telephone. There is an express as well as an implied right to prohibit its use for messages which would damage his business interests, disrupt the family relationship, or destroy amicable social conditions. The act of one having his own wire tapped to vindicate these paramount rights is not within the scope of the statute or the objectives sought to be reached by its enactment. The statute was enacted to protect a telephone subscriber's line from the act of another person; not to safeguard it from his own act".

Since we are in accord with appellant's principal contention that the statute was not intended to have application in the instant factual situation, it becomes unnecessary to pass upon appellant's alternate contention that the Commonwealth failed to prove the corpus delicti and several essential elements of the crime charged, namely, lack of permission, the operability of the device employed, and the specific date of the alleged offense, i.e., that it was subsequent to the enactment of the statute and within the limitation period.

Judgment reversed and appellant discharged.