610 A.2d 1006

COMMONWEALTH of Pennsylvania

v.

Victor Martin PARRELLA, Jr., Appellee.

Superior Court of Pennsylvania.

Argued Sept. 11, 1991.

Filed June 3, 1992.

David J. Flower, Dist. Atty., Somerset, for Com., appellant.

Robert D. Gleason, Johnstown, for appellee.

Before CAVANAUGH, BECK and KELLY, JJ.

KELLY, Judge:

In this Opinion we are called upon to determine whether the trial court properly ordered the suppression of tape recordings of conversations between the appellee and his deceased estranged wife in the prosecution of the appellee for criminal homicide pursuant to 18 Pa.C.S.A. § 5721. The tapes and derivative evidence in controversy was uncovered through the unconsented recording of conversations between the appellee and his estranged wife, which occurred in an apartment on the night of her death. The tapes were made through the use of an improvised interception system consisting of an electronic baby monitor and tape recorder that was surreptitiously installed by the appellee's girlfriend in the apartment where she resided with the appellee. We affirm.

The relevant facts for the purposes of this appeal as discerned from the stipulations of the parties and the transcript of the preliminary hearing are as follows. The appellee, Victor M. Parrella, Jr., is charged with criminal homicide in connection with the death of his estranged wife, Donna Jean Parrella. In Count III of his Application for Omnibus Pre–Trial Relief, the appellee motioned to suppress the contents of tape recordings of conversations between himself and his estranged wife, which were recorded on the night of her death, January 19–20, 1990. The tape recordings were taken by private individuals acting without color of state authority in an apartment located directly above the Mountain House Tavern in Point Borough, Somerset County. The apartment was orally leased by Shelly Lea Horner on a week by week basis where the appellee also resided.

On January 19, 1990, after having been advised by the appellee that he intended to meet with his estranged wife that evening in the apartment, Ms. Horner purchased a Fisher Price Baby Monitor and several blank tapes at a local department store. The baby monitor consisted of two parts, a monitor which would pick up all sounds in the room where it was placed, and a receiver, which would transmit the sound. Ms. Horner then installed the monitor in a drop ceiling in the apartment bedroom and placed the receiver next to a tape recorder on a porch adjacent to one of the apartment windows.

At approximately 11:30 p.m. on January 19, 1990, Ms. Horner turned on the receiver and the tape recorder. Ms. Horner then returned to the Mountain House Tavern below and sat with two friends, Sandra Feldbauer and William Hill. Neither the appellee nor the decedent had any knowledge that their conversations inside the apartment were being recorded.

At approximately 1:00 a.m. on January 20, 1990, Ms. Horner and Ms. Feldbauer testified that they heard a loud thumping noise emanating from the apartment. Ms. Feldbauer also testified that while she was changing the tape in the tape recorder outside the apartment, she heard the appellee say, "Why am I holding a gun to the head of someone I really want to be with?" Additionally, Raymond Wiencek, who resided in the apartment next door, testified that he had previously heard arguing coming from the Horner–Parrella apartment. Mr. Wiencek further testified that at approximately 1:00 a.m., he heard a loud noise which sounded like a gunshot and then heard the appellee repeating over and over, "Donna, are you all right?" However, the police were not notified at that time. Ms. Horner subsequently retrieved the tapes and went to Ms. Feldbauer's brother's apartment where she, Ms. Feldbauer and several others listened to the tapes. Sometime later on the morning of January 20, 1990, Ms. Horner and Ms. Feldbauer returned to the Horner–Parrella apartment to remove Ms. Horner's personal belongings. At that time, Ms. Hor-

ner discovered blood on the carpet in the apartment. The police were subsequently contacted and the tapes were turned over to them.

Shortly thereafter, the appellee was arrested and charged with criminal homicide. A preliminary hearing was held before District Justice Joseph A. Cannoni who ordered the appellee held for trial. The appellee then filed a motion to suppress the tapes and all derivative evidence alleging the tapes were recorded in violation of the Wiretapping and Electronic Surveillance Act, 18 Pa.C.S.A. § 5701 *et seq.* (the Act); thus, the tapes and all derivative evidence must be suppressed pursuant to 18 Pa.C.S.A. § 5721. A hearing was held before the Honorable John M. Cascio. Judge Cascio then granted the appellee's motion to suppress the tapes and all derivative evidence. The Commonwealth filed a timely appeal wherein it has alleged that the trial court's order suppressing the tapes seriously impairs its ability to present its case and prove the charges of criminal homicide against the appellee.[1]

On appeal, the Commonwealth raises two issues for our review.

I. WHETHER THE LOWER COURT ERRED IN RULING THAT THE CONVERSATION BETWEEN THE DEFENDANT AND THE ALLEGED DECE-DENT/VICTIM WAS A PROTECTED "ORAL COM-MUNICATION" WITHIN THE MEANING OF THE WIRETAP AND ELECTRONIC SURVEILLANCE CONTROL ACT, 18 Pa.C.S.A. SECTION 5701, ET SEQ., THAT IS, THAT THE ORAL COMMUNICA-TION WAS UTTERED BY A PERSON WHO POS-SESSED A REASONABLE EXPECTATION OF PRIVACY SUCH THAT THE COMMUNICATION WOULD NOT BE SUBJECT TO INTERCEPTION

---

1. When the Commonwealth has certified that the suppression of evidence substantially handicaps the prosecution, "that certification is not contestable" and "in and of itself precipitates and authorizes the appeal." *Commonwealth v. Dugger,* 506 Pa. 537, 545, 486 A.2d 382, 386 (1986); *see also Commonwealth v. DeMarco,* 396 Pa.Super. 357, 578 A.2d 942 (1990).

UNDER CIRCUMSTANCES JUSTIFYING SUCH EXPECTATION WHERE THE CONVERSATION OCCURRED UNDER CIRCUMSTANCES WHERE INDIVIDUALS NOT PARTY TO THE CONVERSATION ARE ABLE TO HEAR THE CONVERSATION WITHOUT ELECTRONIC OR MECHANICAL DEVICES.

II. ASSUMING ARGUENDO THAT THE CONVERSATION AT ISSUE IS A PROTECTED "ORAL COMMUNICATION," WHETHER SUCH AN INTERPRETATION OF THE WIRETAP AND ELECTRONIC SURVEILLANCE CONTROL ACT UNCONSTITUTIONALLY INFRINGES ON THE RIGHT OF AN APARTMENT TENANT TO BE AWARE OF ACTIVITIES IN HER APARTMENT AS PART OF HER RIGHTS OF "POSSESSING AND PROTECTING PROPERTY" AS GUARANTEED BY ARTICLE I, SECTION 1 OF THE PENNSYLVANIA CONSTITUTION.

(Commonwealth's Brief at 2).

 We note at the outset that because Ms. Horner and Ms. Feldbauer were private individuals who were not acting under color of state authority, their non-consensual recording of the appellee's and decedent's conversation was not "state action," and therefore, is not subject to suppression under the exclusionary rule of the United States Constitution's Fourth Amendment prohibition against unreasonable search and seizure or under Article I, Section 8 of the Pennsylvania Constitution. *See Commonwealth v. Kean*, 382 Pa.Super. 587, 556 A.2d 374, *appeal denied*, 525 Pa. 596, 575 A.2d 563 (1989); *Commonwealth v. Borecky*, 277 Pa.Super. 244, 419 A.2d 753 (1980).

The Commonwealth contends in its first issue that the trial court erred in suppressing the tapes under 18 Pa. C.S.A. § 5721. The Commonwealth argues that the fact the appellee may have had expectation that his conversation with his estranged wife was not subject to interception is not conclusive, as the expectation of privacy must also be

reasonable. The Commonwealth asserts that because limited portions of the appellee's and decedent's conversations were clearly audible through the naked ear to people standing outside the apartment, the parties lost any reasonable expectation of privacy; thus, their conversations were properly recorded. We disagree.

The focus and purpose of the Wiretapping and Electronic Surveillance Control Act is *the protection of privacy. Commonwealth v. DeMarco*, 396 Pa.Super. 357, 371, 578 A.2d 942 (1990) (emphasis in original). Section 5703 of the Act sets forth the law concerning the interception, disclosure, or use of wire, electronic, or oral communication as follows.

> Except as otherwise provided in this chapter, a person is guilty of a felony of the third degree if he:
>
> (1) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication;
>
> (2) intentionally discloses or endeavors to disclose to any other person the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication; or
>
> (3) intentionally uses or endeavors to use the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know, that the information was obtained through the interception of a wire, electronic or oral communication.

The statute defines "intercept" as the "aural acquisition or other acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical or other device. 18 Pa.C.S.A. § 5702. *See also Commonwealth v. Henlen*, 522 Pa. 514, 516, 564 A.2d 905, 906 (1989); *Commonwealth v. Kean, supra*, 382 Pa.Super. at 597 n. 2, 556 A.2d 374. Accordingly, we find that Ms. Horner's and Ms. Feldbauer's use of an electronic baby monitor and receiver in conjunction with a tape recorder in

order to record the conversations of the appellee and the decedent in the apartment to be an interception pursuant to 18 Pa.C.S.A. § 5702 and 5703.

██ However, the Act provides exceptions to the general prohibitions on the interceptions and disclosure of wire and oral communication. 18 Pa.C.S.A. § 5704(2) permits properly authorized investigative or law enforcement officers to intercept wire or oral communications involving criminal activities. 18 Pa.C.S.A. § 5704(2)(ii) also permits the interception of oral communication by a private individual who is one of the parties to a communication, if that private individual has given their prior consent and the attorney general, district attorney, or their specifically designated deputy attorney generals, or assistant district attorneys have reviewed the facts and are satisfied that the consent was freely and voluntarily given and have given their approval before the interception occurs. *See Commonwealth v. Blystone,* 519 Pa. 450, 549 A.2d 81 (1988); *Commonwealth v. Rodriguez,* 519 Pa. 415, 548 A.2d 1211 (1988). Other than as provided in 18 Pa.C.S.A. § 5704(2)(ii), *a private citizen may not intercept a wire or oral communication unless all parties to the communication have given their prior consent to such interception. Barasch v. Bell Telephone Company of Pennsylvania,* 529 Pa. 523, 533, 605 A.2d 1198, 1203 (1992) (emphasis added); *Commonwealth v. DeBlase,* 357 Pa.Super. 71, 76, 515 A.2d 564, 566 (1986) (This Court refuses to create an exception when the private citizen who violated the Act is subsequently murdered.); 18 Pa.C.S.A. § 5704(4). Under the act, any aggrieved person may move to suppress the contents of any intercepted wire, electronic or oral communications or the evidence derived therefrom if the communications were unlawfully intercepted. *Commonwealth v. DeMarco, supra,* 578 A.2d at 948, 949; *Commonwealth v. DeBlase, supra,* 515 A.2d at 566; 18 Pa.C.S.A. § 5721.

██ Instantly, the Commonwealth has attempted to rely upon *Commonwealth v. Cooper,* 240 Pa.Super. 477, 362 A.2d 1041 (1976) for the proposition that because portions of

the appellee's and decedent's conversation were easily overheard outside the apartment, the appellee lost all reasonable expectation of privacy, thus enabling Ms. Horner and Ms. Feldbauer to tape record their conversations inside the apartment. We find the Commonwealth's reliance upon *Commonwealth v. Cooper, supra,* to be misplaced.

In *Commonwealth v. Cooper, supra,* a police officer, lawfully entitled to be in the adjacent hotel room, overheard appellant Cooper's conversations concerning the sale of marijuana, unaided by any mechanical or electronic amplification device. Therefore, this Court properly held that because the conversations were carried on in a tone quite audible to a person standing outside the hotel room, the conversations were knowingly exposed to the public and were not subject to the protection under the Fourth Amendment as the risk of being overheard by an eavesdropper is an inherent condition and a risk assumed whenever we speak. *See Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 582 (1967); *Hoffa v. United States,* 385 U.S. 293, 301–03, 87 S.Ct. 408, 413–14, 17 L.Ed.2d 374, 381–82 (1966).

In the case at bar, unlike *Commonwealth v. Cooper, supra,* only limited excerpts of the appellee's and decedent's conversations were able to be overheard by parties outside the apartment without the aid of the improvised interception system. Accordingly, the appellee and decedent only lost their reasonable expectations of privacy as to the limited portions of their conversations which were overheard outside the apartment without the aid of the improvised interception system. The appellee and decedent did not lose their reasonable expectations of privacy to all of their conversations which occurred in the apartment on the January 19–20, 1990 night, merely because some portions of their conversations were able to be heard outside the apartment. If we were to adopt the Commonwealth's argument, we would be enabling any eavesdropper to immediately begin the unconsented mechanical or electronic amplification and interception of the conversations of anyone in their

home once a portion of their conversation was able to be overheard outside the home with the naked ear. Clearly, this was not the result intended by the legislature when they adopted the Act, whose primary focus and purpose was the protection of privacy. Thus, we find no merit in the Commonwealth's contention that Ms. Horner and Ms. Feldbauer were entitled to surreptitiously record all of the conversations between the appellee and the decedent which occurred inside the apartment on the night of January 19–20, 1990, because limited portions of their conversations inside the apartment were overheard by persons outside the apartment.

Moreover, the conduct of Ms. Horner and Ms. Feldbauer clearly violated the Act as neither the appellee or the decedent had given their prior consent to the interception and tape recording of their conversation inside the apartment as required by 18 Pa.C.S.A. § 5704(4). The fact that excerpts of the appellee's and the decedent's conversations were subsequently overheard outside the apartment is immaterial because Ms. Horner and Ms. Feldbauer had set up their improvised interception equipment in the apartment before the appellee and the decedent had even begun their conversations. Thus, Ms. Horner and Ms. Feldbauer had already decided to intercept the appellee's and decedent's conversation in violation of the Act before the appellee and decedent arrived at the apartment. Accordingly, the appellee and the decedent could not have possibly lost their reasonable expectation of privacy and impliedly consented to the interception of their conversations when the interception of their conversations inside the apartment had already commenced before any portion of their conversations were overheard outside the apartment without the aid of the improvised interception system.

In its second issue on appeal, the Commonwealth contends that any interpretation of the Act which prohibits a person with a possessory interest in a premises from monitoring activities on the premises unconstitutionally infringes upon their rights to possess and protect their prop-

erty, and therefore, is unconstitutional under Article I, Section 1 of the Pennsylvania Constitution.[2] The Commonwealth argues that under *Commonwealth v. Goldberg*, 208 Pa.Super. 513, 224 A.2d 91 (1966), a person having an interest in a property has a paramount right with regard to the use of the property. The Commonwealth asserts that when a person possessing a paramount interest consents to the use of her premises, there is an implied condition that the premises will not be used to the detriment of the paramount possessor's interest; thus, the paramount possessor may monitor the activities of subordinate possessor to ensure that the premises are not being used to her detriment. We disagree.

We find that the Commonwealth's reliance upon *Commonwealth v. Goldberg, supra,* to be misplaced as the case is both factually and legally distinguishable from the case before this Court. The *Goldberg* case arose under the long repealed Pennsylvania Anti–Wiretapping Statute, Act of July 16, 1957, P.L. 956 No. 411, *(repealed)*. In *Goldberg,* the appellant was the named subscriber to a telephone in the marital home he shared with his wife. The appellant, suspecting his wife of infidelity, tapped his own phone in order to monitor the telephone calls between his wife and her purported paramour. The appellant was subsequently arrested and convicted of violating the Anti–Wiretapping Statute. This Court reversed the appellant's conviction holding that the purpose of the Anti–Wiretapping Statute was to protect a telephone subscriber's phone calls from being intercepted by a third person and not to protect the telephone line from being monitored by its own subscriber. Thus, the appellant, as the subscriber, possessed a paramount interest to intercept telephone conversations on the line when persons he permitted to use the telephone were doing so in detriment to the appellant's business, household

2. Article I, section 1:
All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

or marital interests. Therefore, the appellant, as the subscriber and possessor of a paramount interest in the telephone line, could not be convicted under the Anti–Wiretapping Statute for tapping his own line. *Commonwealth v. Goldberg, supra,* 208 Pa.Superior Ct. at 517, 224 A.2d at 93. However, this case was only concerned with whether the appellant violated the Anti–Wiretapping Statute and did not discuss whether the conversations intercepted by the appellant without the consent of the intercepted parties were admissible in any legal proceedings.[3]

Subsequently, however, this exact issue has been addressed by our Supreme Court in *Commonwealth v. Papszycki,* 442 Pa. 234, 275 A.2d 28 (1971), which was decided under the repealed Anti–Wiretapping Statute and by this Court in both *Commonwealth v. DeBlase, supra,* and *Commonwealth v. Baldwin,* 282 Pa.Super. 82, 422 A.2d 838 (1980), which were decided under an earlier version of our current act and the repealed Anti–Wire Tapping Act, respectively. In each of these cases, both our Supreme Court and this Court have held that unless all parties have given their consent to the interception of their telephone conversations by a private individual, the evidence elicited through the illegal interception is inadmissible in any legal proceeding and must be suppressed. Furthermore, our current act requires that all parties to a communication must give their consent before any interception may occur. *See Barasch v. Bell Telephone Company of Pennsylvania, supra.* Finally, the Act permits any aggrieved person to move to suppress the contents of any intercept wire, electronic or oral

**3.** Moreover, the principle on which the *Goldberg* court relied upon, that a telephone subscriber possesses an absolute right to record his own conversations and to protect the use made of his own telephone, which was first set forth in *People v. Appelbaum,* 277 App.Div. 43, 97 N.Y.S.2d 807, *aff'd* 301 N.Y. 738, 95 N.E.2d 410 (1950), is no longer the law of Pennsylvania. *See Barasch v. Bell Telephone Company of Pennsylvania, supra* (caller I.D. service held to be violative of 18 Pa.C.S.A. § 5704(4) as calling party has not consented to the capture of his or her phone number by the called party). *See also Commonwealth v. Jung,* 366 Pa.Super. 438, 531 A.2d 498 (1987) (highly critical of *Commonwealth v. Goldberg, supra* in dicta).

communication, or evidence derived therefrom, taken in violation of the Act. *See* 18 Pa.C.S.A. § 5721.

Instantly, Ms. Horner is not on trial for violating 18 Pa.C.S.A. § 5704(4), rather it is the appellee who is on trial for murder. Thus, we are not called upon to determine whether Ms. Horner may be prosecuted for the unconsented recording of conversations in her own apartment, but rather whether the fruits of her unconsented interception of the conversations inside the apartment may be admitted into evidence against her roommate, the appellee. Accordingly, the Commonwealth's argument that the Act unconstitutionally infringes upon Ms. Horner's rights under Article I, Section 1 of the Pennsylvania Constitution to protect her property is not in issue as she is not being prosecuted for violating the act; therefore, this interesting issue cannot be resolved until it is raised by a party who is being prosecuted under the Act for the unconsented interception of conversations in their own dwelling. *But see Commonwealth v. Murray*, 423 Pa. 37, 51, 223 A.2d 102, 109 (1966) (under Article I, Section 1 of the Pennsylvania Constitution, "[t]he right of privacy is as much property of the individual as the land to which he holds title and the clothing he wears on his back."). Here, the tapes and derived evidence sought to be utilized as evidence by the Commonwealth in its criminal homicide prosecution of the appellee were recorded by Ms. Horner and Ms. Feldbauer without the consent of either the appellee or the decedent. Due to this lack of consent, the tapes were taken in violation of 18 Pa.C.S.A. § 5704(4). The fact that one of the interceptors, Ms. Horner, resided in the orally leased premises with the appellee is immaterial as 18 Pa.C.S.A. § 5721 clearly specifies that upon motion, any wire, electronic, or oral communication intercepted in the violation of the Act must be suppressed. Thus, the trial court properly suppressed the tapes and all derivative evidence pursuant to 18 Pa.C.S.A. § 5721.

Finally, when the trial court entered the order granting the appellee's motion to suppress, the trial court suppressed only the tapes of the conversations between the appellee

and the decedent, and the testimony from any person regarding what he or she heard on the tapes. The trial court's order did not suppress at trial the testimony of any person regarding what he or she may have overheard outside the apartment without the aid of any electronic or mechanical amplification device; thus, the Commonwealth is free to present such evidence at trial.

Based upon the foregoing, the trial court's order suppressing the tapes and all derivative evidence is affirmed.

Order AFFIRMED.