J-S79028-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ERICK JON KARLSON :
:
Appellant : No. 968 MDA 2018

Appeal from the Judgment of Sentence April 12, 2018
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0000629-2017

BEFORE:  SHOGAN, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.: **FILED FEBRUARY 15, 2019**

Appellant, Erick Jon Karlson, appeals from the judgment of sentence entered on April 12, 2018, as made final by the denial of Appellant's post-sentence motion on June 8, 2018.  We affirm.

Appellant was arrested and charged with numerous crimes, including arson, burglary, and risking a catastrophe.  Within the affidavit of probable cause, the police alleged that, on April 12, 2017, Appellant entered real property owned by Harold Peterson and set fire to the property's basement.  Affidavit of Probable Cause, 4/13/17, at 1.  Appellant proceeded to a jury trial on March 5, 2018, where the following evidence was presented.

The Commonwealth first presented testimony from witness Kirk Mitchell. Mr. Mitchell testified that he and his wife own a number of rental properties in Altoona, Pennsylvania.  N.T. Trial, 3/5/18, at 28.  In 2017, Mr. Mitchell's wife rented a first-floor apartment, located at 311 Cherry Avenue, to Appellant and

Appellant's girlfriend. During that time, Mr. Mitchell maintained a workshop in the basement of 311 Cherry Avenue, directly below Appellant's apartment. *Id.* at 30.

Mr. Mitchell testified that, at approximately 7:00 p.m. on April 11, 2017, he was in his basement workshop when he "noticed a lot of pacing upstairs in the first floor apartment." *Id.* Mr. Mitchell testified that he then heard Appellant say "I will burn your shit down. I'll burn up your stuff." *Id.* at 31. As Mr. Mitchell testified, when Appellant spoke these words, he was speaking in a "very loud" voice and Appellant's statements were "plainly hearable" to Mr. Mitchell's ears in the basement. *Id.*

Mr. Mitchell testified that he stayed in the workshop for approximately an hour and, during this time, he heard Appellant say "I will burn your shit down[,] I'll burn up your stuff," or similar statements, "probably six or seven times." *Id.*

Mr. Mitchell also testified:

> at first I ignored [Appellant's words], I was doing some work in the shop. But after it became obvious that it was somewhat disturbing, I used my [cell] phone and I recorded part of it, just kind of – I'm not sure exactly why, but just as kind of a verification because some of it, as I said, was extremely disturbing.

*Id.* at 32.

Over Appellant's objection, the Commonwealth introduced and played to the jury the audio recording of Appellant's voice that Mr. Mitchell made that night. *Id.*; Commonwealth's Exhibit 1.

Next, the Commonwealth called Harold Peterson's wife, Barbara Peterson, as a witness. Ms. Peterson testified that she and her husband live at 1411 East Presqueisle Street, in Philipsburg, Pennsylvania, and that they had previously rented the neighboring property, located at 1401 East Presqueisle Street, to Appellant. *Id.* at 40-41. At the time of the incident, the Petersons still owned 1401 East Presqueisle Street and they were renting the property to residential tenants. *Id.* at 46-47.

Ms. Peterson testified that, at approximately 9:50 p.m. on April 11, 2017, Appellant knocked on her door and asked to speak to her husband. *Id.* at 41. Ms. Peterson testified that she told Appellant that her husband was not home and to "please come back tomorrow." *Id.* She testified that Appellant "just said okay and walked away." *Id.*

Harold Peterson testified that, on the afternoon of April 12, 2017, he was working in his 1411 East Presqueisle Street yard; he saw Appellant drive down the alley and stop his truck outside of the 1401 East Presqueisle Street property. *Id.* at 49-50. Mr. Peterson testified:

> [Appellant] got out of the truck and when he got out of the truck I said hi, Erick. He never said a word. He goes into the basement [of 1401 East Presqueisle Street], down into the basement. . . .
>
> Well, he was – he went down in there and my thought first was when [Appellant and Appellant's girlfriend] moved out [of their 1401 East Presqueisle Street apartment], maybe he left something in the basement because they [] stored [stuff] in the basement. . . . I didn't know who owned what down in that basement. But he wasn't there very long. And he

come back up the steps and I said Erick. And then that's when he . . . [gave me] the middle finger. . . .

[He got back into his truck, began to drive, and gave me the middle finger] consistent[ly] the whole way down the alley[;] he took a right on Hale Street and he stopped down there at the end of my other lot, our property, by a dumpster. He sat there and he just hollers, started hollering up to me, eff you, eff you, eff you. I thought, what the hell's going on?

*Id.* at 50-54.

Mr. Peterson testified that he walked into his 1401 East Presqueisle Street property and saw "a ball of fire burning . . . in one spot" in the basement; the ball of fire was approximately four or five feet high. *Id.* at 54. Mr. Peterson grabbed an empty windshield washer container, filled it up with water, and doused the flames. *Id.* at 56. Mr. Peterson then called the police.

Pennsylvania State Police Trooper Shane Murarik responded to the scene of the crime. As Trooper Murarik testified, when he entered the basement of 1401 East Presqueisle Street, he saw smoke and smelled gasoline. *Id.* at 75.

During trial, the Commonwealth offered Pennsylvania State Police Trooper Ryan Bickel as an expert in the field of fire and arson investigation. *Id.* at 80. At the conclusion of *voir dire*, and over Appellant's objection, the trial court accepted Trooper Bickel as an expert in the proffered field. *Id.* at 85.

Trooper Bickel testified that, on the date of the incident, he was dispatched to 1401 East Presqueisle Street and he assisted in the fire investigation. *Id.* Trooper Bickel testified that when he arrived at the

property, he observed, in the middle of the basement floor, "what remained of a plastic bottle and some liquid inside." *Id.* at 86. Trooper Bickel testified that he smelled "liquid accelerant or gasoline" from inside of the burnt plastic bottle and concluded that the fire "was intentionally set." *Id.* at 88-89.

Finally, Pennsylvania State Police forensic scientist Albert Lattanzi, Jr. testified: isopropanol alcohol was detected on clothes that the police seized from Appellant and gasoline was identified as the substance in the melted plastic bottle. *Id.* at 102 and 104-105.

The jury found Appellant guilty of burglary, arson, attempted arson, risking a catastrophe, and possessing instruments of crime.[1] On April 12, 2018, the trial court sentenced Appellant to serve an aggregate term of 42 to 84 months in prison for his convictions. N.T. Sentencing, 4/12/18, at 5-7.

Following the denial of Appellant's post-sentence motion, Appellant filed a timely notice of appeal. Appellant raises two claims on appeal:

> [1.] Did the trial court abuse its discretion in accepting Trooper Ryan C. Bickel as an expert in fire and arson investigation?
>
> [2.] Did the trial court abuse its discretion in granting the Commonwealth's motion *in limine* in the form of a motion to admit audio recording of [Appellant] and in allowing Kirk Mitchell to play from his cell phone recorded statements made by [Appellant] that were intercepted without [Appellant's] consent, in violation of the Wiretap Act?

---

[1] 18 Pa.C.S.A. §§ 3502(a)(2), 3301(a)(1)(ii), 901(a), 3302(b), and 907(a), respectively.

Appellant's Brief at 9 (some internal capitalization omitted).

Appellant first claims that the trial court erred in accepting Trooper Bickel as an expert. "The admission of expert scientific testimony is an evidentiary matter for the trial court's discretion and should not be disturbed on appeal unless the trial court abuses its discretion." *Commonwealth v. Safka*, 95 A.3d 304, 307 (Pa. Super. 2014) (internal quotations, citations, and corrections omitted). Pennsylvania Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
>
> (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
>
> (c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702. "The standard for qualifying an expert witness is a liberal one: the witness need only have a reasonable pretension to specialized knowledge on a subject for which expert testimony is admissible." *Commonwealth v. Kinard*, 95 A.3d 279, 288 (Pa. Super. 2014) (*en banc*) (internal citation omitted).

Appellant does not challenge the trial court's determination that Trooper Bickel's testimony would help the jury "understand the evidence or [] determine a fact in issue." *See* Pa.R.E. 702(b). Appellant also does not

challenge the trial court's determination that Trooper Bickel's methodology is generally accepted in the field of fire and arson investigation. *See* Pa.R.E. 702(c). Instead, Appellant argues that Trooper Bickel "lack[ed] specialized and extensive training and experience in the field" and, thus, Trooper Bickel "did not possess a reasonable pretension to specialized knowledge on the subject matter." Appellant's Brief at 22. This claim fails.

With respect to Trooper Bickel's qualifications, the trooper testified that, at the time of trial: he had been a state trooper for approximately eight years; he was also a part-time deputy fire marshal and had been acting in that role for approximately three to four years; "[o]ver the course of the three, four years that [he had] been a fire marshal[, he had] been to approximately eight to ten fires . . . [that] var[ied] in range from single-room fires to multiple fatal fires [where they] had to dig out the whole house;" he attended the state fire academy in Lewistown, Pennsylvania and, while there, he attended classes that taught "basic construction . . . for wood and for other noncombustible materials," "basic arson investigation," and "electrical . . . [arc] mapping and stuff like that;" he attended two seminars that taught arson training; and, he participated in seminars that taught "ar[c] mapping and electrical and clandestine lab stuff." *Id.* at 78-85.

On appeal, Appellant faults Trooper Bickel for failing to testify that he passed "any formal tests on the subject matter" and for being a "part-time[]" deputy fire marshal. Appellant's Brief at 21-22. However, Trooper Bickel's testimony revealed that, at the time of trial, he had received considerable

education and possessed extensive practical training and experience in the field of fire and arson investigation. **See Kinard**, 95 A.3d at 288 ("The witness' expertise may be based on practical, occupational, or other experiential training; it need not have been gained through academic training alone"). This education, training, and experience unquestionably provided Trooper Bickel with "scientific, technical, or other specialized knowledge [] beyond that possessed by the average layperson[.]" Pa.R.E. 702(a). As such, we conclude that the trial court did not abuse its discretion in accepting Trooper Bickel as an expert in the field of fire and arson investigation.

Next, Appellant claims that the trial court erred when it admitted into evidence the audio recording of Appellant's voice that Kirk Mitchell made on the night of April 11, 2017. According to Appellant, the recording was inadmissible because Mr. Mitchell illegally intercepted Appellant's oral communications without his consent, in violation of the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S.A. §§ 5701 *et seq.* (hereinafter "the Wiretap Act" or "the Act"). This claim fails.

> [Our] standard of review for a trial court's evidentiary rulings is narrow. The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Mendez*, 74 A.3d 256, 260 (Pa. Super. 2013) (internal quotations and citations omitted).

Among other activities, the Wiretap Act generally prohibits the intentional interception of a "wire, electronic or oral communication." 18 Pa.C.S.A. § 5703. The Act defines the term "intercept" as "[a]ural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device."[2] 18 Pa.C.S.A. § 5702. Finally, the Act defines the term "oral communication" as "[a]ny oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation." *Id.*

As the trial court ably explained in its opinion, Mr. Mitchell did not "intercept" Appellant's voice because Appellant did not engage in an "oral communication" under the Act. *See* Trial Court Opinion, 6/8/18, at 2-4. Specifically, the trial court held, Appellant uttered his words so loudly that he did not "possess[] an expectation that such communication [was] not subject to interception under circumstances justifying such expectation." *Id.* at 3-4; *see also* 18 Pa.C.S.A. § 5702. Indeed, and as the trial court recognized, the

---

[2] Under the Act, the phrase "electronic, mechanical or other device" excludes "[a]ny telephone . . . furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business." 18 Pa.C.S.A. § 5702. However, in *Commonwealth v. Smith*, 136 A.3d 170 (Pa. Super. 2016), this Court held that, under the Act, a defendant was not using a "telephone" when he used a "voice memo" application on his cell phone to surreptitiously record a conversation. *Id.* at 178.

case at bar is controlled by our Supreme Court's opinion in ***Commonwealth v. Louden***, 638 A.2d 953 (Pa. 1994).

In ***Louden***, the defendants lived in a home that was "one-half of a double house with a common party wall." ***Id.*** at 954. The defendants operated a childcare center in their home. A separate family, named the Kulovichs, lived in the other half of the double house and an individual named Carol Wolfe frequently visited the Kulovichs. ***Id.***

While visiting the Kulovichs, Ms. Wolfe began hearing, from the defendants' house, "adults using obscene language, directing obscenities at particular children, and arguing over explicit sexual issues." ***Id.*** She also heard "threats being made at the children followed by smacking noises and children crying and screaming." ***Id.*** Ms. Wolfe went to the police and, to substantiate her claims of child abuse against the defendants, Ms. Wolfe "placed [a] tape recorder in the hallway of [the Kulovichs'] home" and recorded the sounds that emanated from the defendants' home. ***Id.***

The defendants were arrested and charged with endangering the welfare of a child. Prior to trial, the defendants filed a pre-trial motion and claimed that Ms. Wolfe's tape recordings must be suppressed, as the recordings violated the Wiretap Act. ***Id.*** at 954 and 958. The Supreme Court held that the tape recordings did not violate the Wiretap Act because the defendants' loud conversations – which were plainly audible to Ms. Wolfe next door – did not constitute "oral communications" under the Act. ***Id.*** at 958-959. The ***Louden*** Court explained:

"oral communication" is defined under the Act as:

> Any oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation. The term does not include any electronic communication.

18 Pa.C.S. § 5702.

. . .

In the case before us, the conversations in the [defendants'] home were loud enough to be heard through the wall of their home into the [Kulovichs'] home. The Kulovichs and their invitees, including . . . Ms. Wolfe, could hear adults in the [defendants'] home using obscene language, arguing over explicit sexual issues, directing obscenities at particular children, threatening the children under their care, and smacking them followed by the children crying and screaming.

The question becomes whether, under these circumstances, the [defendants] had a justifiable expectation that their secret conversations, audible next door, were not subject to being intercepted. We think not. As we noted in **Commonwealth v. Henlen**, 564 A.2d 905 (Pa. 1989), the broad principles of **Commonwealth v. Blystone**, 549 A.2d 81 (Pa. 1988) . . . , are applicable in determining whether circumstances support a conversant's expectation that his or her conversation would not be intercepted. **Blystone** makes it clear that "[w]hat one chooses to do with another's secrets may differ from the expectation of the teller, but it is no longer his secret. How, when and to whom the confidant discloses the confidence is his choosing. He may whisper it, write it, or in modern times immediately broadcast it as he hears it." **Blystone**, 549 A.2d at [87 and 88].

Applying these principles to the circumstances before us, we are satisfied that once the conversation, threats and arguments between the [defendants] and the screams of the children became audible to the Kulovichs, through a dividing wall in their home, the [defendants] lost whatever

- 11 -

expectation of privacy they had that their secret discussions and conversations would not be overheard, intercepted and memorialized for posterity on tape or whatever device the listeners chose to broadcast the [defendants'] secret conversations.

Accordingly, [] these conversations were not "oral communications" protected under the Act.

*Louden*, 638 A.2d at 959 (some internal citations omitted).

The same is true in the case at bar. Here, Appellant rented a first-floor apartment from the Mitchells and Appellant did not have the right to exclude individuals from the basement. As Mr. Mitchell testified – and as the trial court held – Mr. Mitchell was in the basement of the building when he "clearly [and] without the aid of any device[] heard [Appellant] yelling and ranting about burning down a house." Trial Court Opinion, 6/8/18, at 3; *see also* N.T. Trial, 3/5/18, at 30. While still in the basement, Mr. Mitchell then recorded Appellant's loud and "plainly hearable" words on his cell phone.

To paraphrase the *Louden* Court:

once [Appellant's words and threats] . . . became audible to [Mr. Mitchell in the basement] . . . [Appellant] lost whatever expectation of privacy [he] had that [his] secret [words and threats] would not be overheard, intercepted and memorialized for posterity on tape or whatever device the listeners chose to broadcast [Appellant's] secret [words and threats]. . . .

Accordingly, [Appellant's words and threats] were not "oral communications" protected under the Act.

*See Louden*, 638 A.2d at 959.

Appellant's claim on appeal thus fails.[3]

_____

[3] Within Appellant's brief, Appellant analogizes the current case to **Commonwealth v. Parrella**, 610 A.2d 1006 (Pa. Super. 1992) and Appellant claims that he is entitled to relief under **Parrella**. **See** Appellant's Brief at 27-31. In **Parrella**, the defendant's girlfriend ("the girlfriend") secretly placed a baby monitor microphone in the defendant's apartment, in an attempt to surreptitiously record a conversation between the defendant and the victim; the girlfriend placed the receiver to the baby monitor "on a porch adjacent to one of the apartment windows" and then tape-recorded the sounds that emanated from the receiver. **Parrella**, 610 A.2d at 1007-1008. Through the amplification from the baby monitor's microphone, the girlfriend recorded or heard statements from the defendant that implicated him in the victim's death. **Id.** at 1008.

The defendant filed a motion to suppress the girlfriend's recordings, claiming that the tapes were recorded in violation of the Wiretap Act. The trial court agreed and granted the defendant's motion; the Commonwealth appealed and we affirmed the trial court's decision. **Id.** On appeal, we held that, even though limited portions of the defendant's conversation with the victim were audible to the girlfriend without the aid of the baby monitor, the defendant and the victim "did not lose their reasonable expectations of privacy to all of their conversation which occurred in the apartment." **Id.** at 1010. Rather, we held that the defendant and the victim "only lost their reasonable expectations of privacy as to the limited portions of their conversations which were overheard outside the apartment without the aid of the improvised interception system." **Id.** We further held that the remainder of the recorded conversation between the defendant and the victim, which was only audible because of the secret baby monitor that was positioned in the defendant's apartment, must be suppressed because the recordings were obtained in violation of the Wiretap Act. **Id.**

Appellant's reliance upon **Parrella** is mistaken. In the case at bar, Mr. Mitchell recorded the entirety of Appellant's loud and "plainly hearable" words and threats while Mr. Mitchell was lawfully present in his own basement – and Mr. Mitchell did so without the aid of any amplification device. Therefore, and in accordance with **Louden**, Appellant's words and threats were not "oral communications" under the Wiretap Act, as Appellant did not have a reasonable expectation of privacy "that [his] secret [words and threats] would not be overheard, intercepted and memorialized for posterity on tape or

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/15/2019

---

whatever device the listeners chose to broadcast [Appellant's] secret [words and threats]." *See Louden*, 638 A.2d at 959.