J-A21014-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| AARON BAEZ | : | No. 169 EDA 2021 |

Appeal from the Order Entered December 11, 2020,
in the Court of Common Pleas of Monroe County,
Criminal Division at No(s): CP-45-CR-0001739-2019.

BEFORE:   KUNSELMAN, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED DECEMBER 01, 2021**

The Commonwealth takes this interlocutory appeal as of right[1] from the order suppressing its evidence against Aaron Baez.  Because police convinced a third party to do what the officers could not — namely, search Mr. Baez's backpack without a warrant — we affirm.

The suppression court found the facts to be as follows:

> On June 30, 2019, Pocono Mountain Regional Police officers responded to [Mr. Baez's 911 call] that someone had stolen his backpack at a Burger King . . . Officer William Carey and Corporal Matthew Nero [arrived,] quickly located the backpack, and returned it to [Mr. Baez].  After identifying [Mr. Baez], they . . . found that an open warrant out of Florida and/or a Monroe County probation detainer had been lodged against him.  At this time, Officer Carey saw [Mr. Baez] starting to act "strangely," by which he meant, "a little agitated." N.T., 6/19/20, 24.  While waiting

---

[*] Former Justice specially assigned to the Superior Court.

[1] **See** Pennsylvania Rule of Appellate Procedure 311(d).

to confirm whether Florida was seeking extradition, Officer Carey handcuffed [Mr. Baez] and had him sit on the ground.

Christine Monaco arrived. She indicated she is friends with [Mr. Baez] . . . she had arranged to meet [him] at the Burger King to give him a ride, but he notified her later about his missing bag. [Eventually, Mr. Baez] gave her the backpack and asked her to put it in her car. Nothing in the testimony of the officers or [Ms.] Monaco suggests [Mr. Baez] made any representation authorizing [her] to access and to use the contents of the bag, to hold it for any reason other than temporary storage, or to consent to a search on his behalf. *See*, *e.g.*, *id.* at 11-12. He gave it to her with "instructions to put it in the truck." *Id.* at 12. Corporal Nero then confirmed that Florida requested extradition and placed [Mr. Baez] in the back of his patrol car.

[Ms.] Monaco met Corporal Nero, whom she knew as a neighbor and friend. They had a friendly dialogue. [Ms.] Monaco told Corporal Nero she first met [Mr. Baez] while working with Attorney William Watkins, who had represented [Mr. Baez] in an unrelated matter. At the time they spoke, [Ms.] Monaco had possession of [the] backpack. She asked [the officer] if she was allowed to put it in her car.

Corporal Nero told her he might be concerned about what [Mr. Baez's] bag could contain, explaining that [Mr. Baez] had previously been convicted for a firearm-possession charge. *Id.* at 50; N.T., 9/22/20 at 15. He asked her, "Are you taking possession of the bag? . . . Do you want to check what's in it before you take possession of it?" N.T., 6/19/20, at 51. [Ms.] Monaco recalled him asking if she minded searching the backpack "for her own protection, because, if she got pulled over, and there's something in the bag, it's going to be her responsibility." N.T., 9/22/20, at 13.

She said, "Sure," and opened the bag. *Id.*

Reaching in the backpack, she immediately felt a handgun [and gave the bag to the police.] Corporal Nero, together with Officer Carey, searched through the contents, which included . . . a clear baggie of suspected heroin . . .

> Officer Carey then read [Mr. Baez] his ***Miranda v. Arizona***, 384 U.S. 436 (1966), warnings . . . Corporal Nero asked [him] about the handgun, and [Mr. Baez] said he got it from some house in Mount Pocono. N.T., 6/19/20, at 28. [He] invoked his right to counsel when he asked for more information. ***Id.*** Neither officer asked further questions in light of his exercise of his rights.

Trial Court Opinion, 12/11/20, at 2-4 (some citations to the record omitted; some citations amended) (some punctuation omitted).

The Commonwealth charged Mr. Baez with carrying a firearm without a license, possessing a firearm with an altered serial number, and various drug-trafficking offenses.[2] On July 11, 2019, Mr. Baez waived a preliminary hearing before the magisterial district court.

The trial court arraigned him on September 4, 2019. He did ***not*** file a motion to suppress within 30 days of that arraignment. Thereafter, the court scheduled a trial for April 7, 2020, but the COVID-19 pandemic prompted a postponement.

Without seeking leave to file an untimely omnibus, pretrial motion, Mr. Baez moved to suppress the evidence against him on April 16, 2020. At the suppression hearing, the Commonwealth moved to dismiss Mr. Baez's motion to suppress as waived, because, under the Pennsylvania Rules of Criminal Procedure, he had until October 4, 2019 to seek suppression. The court took the Commonwealth's motion to dismiss under advisement and proceeded with the hearing. The parties filed post-hearing briefs.

---

[2] ***See*** 18 Pa.C.S.A. §§ 6106(a)(1), 6110.2(a); 35 Pa.C.S.A. § 780-113(a)(16), (32); 18 Pa.C.S.A. § 5503(a)(1); and 35 Pa.C.S.A. § 780-113(a)(30).

On December 11, 2020, the court issued an opinion and order denying the Commonwealth's motion to dismiss and granting Mr. Baez's motion to suppress. This timely appeal followed.

The Commonwealth raises three issues. They are:

1.    Whether the [suppression] court abused its discretion in denying the Commonwealth's motion to dismiss the omnibus motion [as untimely]?

2.    Whether the [suppression] court erred in granting [Mr. Baez's] motion to suppress the evidence obtained from the backpack . . . ?

3.    Whether the [suppression] court erred in granting [Mr. Baez's] motion to suppress the statements [he] made [as] fruit of the poisonous tree?

Commonwealth's Brief at 7. First, we dispose of issue one and then address issues two and three simultaneously.

*1.    The Refusal to Dismiss the Suppression Motion as Untimely*

In its first issue, the Commonwealth asks whether the suppression court **abused its discretion** by refusing to dismiss Mr. Baez's omnibus, pretrial motion as untimely. This Court has said, the Rules of Criminal Procedure permit "the trial court to consider an untimely suppression motion in the interests of justice. A trial judge should exercise discretion to hear an untimely oral suppression motion on this basis in such situations where the merits [are] so apparent that justice requires it be heard." **Commonwealth v. Long**, 753 A.2d 272, 279–80 (Pa. Super. 2000) (quotations and citations omitted).

Despite accurately framing this issue, the Commonwealth does not address our deferential standard of review in its argument. In fact, the Commonwealth neither acknowledges nor defines that standard of review. *See* Commonwealth's Brief at 6.

The abuse-of-discretion standard is not an invitation for this Court to second guess the suppression court. We may not substitute our judgment for its, because "abuse of discretion is not merely an error of judgment, but is, rather, the overriding or misapplication of the law; or the exercise of judgment that is manifestly unreasonable; or the result of bias, prejudice, ill-will, or partiality . . . ." ***Commonwealth v. Rogers***, ___ A.3d ___, ___, 342 EDA 2017 Slip Opinion at 5 (Pa. Super. 2021) (quoting ***Commonwealth v. Santos***, 176 A.3d 877, 882 (Pa.Super. 2017)).

To mount an abuse-of-discretion attack against the refusal to dismiss Mr. Baez's motion to suppress as waived, the Commonwealth "needed to demonstrate how the [suppression] court's ruling overrode the law, was manifestly unreasonable, or the product of bias, prejudice, ill-will or partiality." ***Id.*** It has not done so. *See* Commonwealth's Brief at 16-19.

Instead, the Commonwealth's argument is an obvious reproduction of its post-hearing brief. ***Compare id. with*** Commonwealth's Brief in Opposition to Omnibus Pretrial Motion at 5-7. The Commonwealth simply reargues this issue *de novo*. This *de novo* argument essentially asks us to substitute our judgment for that of the suppression court and to usurp that court's

discretionary prerogative to apply the Rules of Criminal Procedure in the first instance.

Thus, the Commonwealth "does not contend, much less persuade us, the [suppression] court overrode the law; made a manifestly unreasonable decision; or was motivated by bias, prejudice, or ill will." ***Rogers***, ____ A.3d at ____, Slip Opinion at 5-6. This procedural issue warrants no appellate relief.[3]

*2.    The Search and the Inculpatory Statement*

On the merits, the Commonwealth initially contends that the federal and state constitutions do not apply, because there was no governmental action

---

[3] Like the Commonwealth, our dissenting colleague fails to appreciate the deferential standard of review that we must use to review this issue. More importantly, the Dissent misapprehends what we actually said in dismissing this issue. The Dissent believes we "found that the suppression court properly excused the untimely filing in the 'interest of justice,' noting that the merits of the motion were apparent." Dissenting Statement at 3. We do not.

Instead, we find the Commonwealth's neglected to argue the abuse-of-discretion standard at hand. Thus, the Commonwealth ***does not <u>persuade</u>*** us that such an abuse occurred. In failing to be persuaded, we do not truly decide whether such an abuse occurred. Instead, we adhere to the principle of judicial restraint that, where an appellant's argument is underdeveloped, "this Court will not act as counsel and will not develop arguments on behalf of an appellant." ***Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007).

Straying from this precept, the Dissent disregards the lack of an abuse-of-discretion argument by the Commonwealth and undertakes its own "review of the record [and finds] that the suppression court abused its discretion in concluding that the interests of justice warranted consideration of [Mr. Beaz's] untimely suppression motion." Dissenting Statement at 2. In doing so, the dissent provides the Commonwealth with the abuse-of-discretion argument that it failed to make. We, by contrast, decline to "act as counsel" for the Commonwealth's appeal. ***Hardy***, ***supra***.

for the Fourth Amendment and Article I, § 8 to restrain. Alternatively, it claims the police reasonably believed Ms. Monaco had authority to consent to a search of the backpack for Mr. Baez. Finally, because the Commonwealth believes the police lawfully seized the evidence at bar, it argues Mr. Baez's post-search-and-seizure statement was not fruit of the poisonous tree. We address each contention in turn.

Whether Ms. Monaco acted as a state agent when she looked inside Mr. Baez's backpack presents a pure question of constitutional law. *See*, *e.g.*, ***Commonwealth v. Yim***, 195 A.3d 922, 926 (Pa. Super. 2018); *see also* ***Skinner v. Railway Labor Executives' Ass'n***, 489 U.S. 602 (1989). "Our review of questions of law is *de novo*." ***Commonwealth v. Shaffer***, 209 A.3d 957, 969 (Pa. 2019), *cert. denied* sub nom. ***Shaffer v. Pennsylvania***, ___ U.S. ___, 140 S. Ct. 2738 (2020). Because Mr. Baez prevailed below, our scope of review includes "the evidence from [his] witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings." ***Commonwealth v. Korn***, 139 A.3d 249, 252 (Pa. Super. 2016).

The Fourth Amendment to the Constitution of the United States dictates that, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." Likewise, the Constitution of the Commonwealth of Pennsylvania provides that, "The people shall be secure in their persons, houses, papers

and possessions from unreasonable searches and seizures . . . ."  Pa. Const. art. I, § 8.  Under both provisions, "a search conducted without a warrant is presumed to be unreasonable unless it can be justified under a recognized exception to the search warrant requirement."  **Commonwealth v. Davis**, 188 A.3d 454, 457 (Pa. Super. 2018).  Here, the police had no warrant.  Thus, if the constitutions apply to this search, the evidence the search produced is presumptively unlawful and in admissible at trial.

Ms. Monaco's status as either a private actor or an agent of the police is critical, because "the Fourth Amendment does not apply to a search or seizure, even an arbitrary one, effected by a private party on his own initiative . . . ."  **Skinner**, 489 U.S. at 614.  If Ms. Monaco acted on her own, the evidence is admissible at trial.  However, the Fourth Amendment "protects against such intrusions if the private party acted as an instrument or agent of the Government."  **Id.**

Similarly, "Article I, § 8 does not require the exclusion of evidence wrongfully obtained by a private party . . . [when] not acting at the behest of any government authority."  **Commonwealth v. Kean**, 556 A.2d 374, 378 (Pa. Super. 1989).  Our precedents treat the state test for private searches as coextensive with the federal test.  **See id**; **see also Commonwealth v. Parrella**, 610 A.2d 1006 (Pa. Super. 1992).

To understand that test, we turn to **Skinner**, **supra**.  There, the Supreme Court of the United States ruled that private employers' collections of bodily fluid samples from their employees were not private searches,

because the employers collected the samples under regulations of the Federal Railroad Administration. Justice Kennedy explained, "Whether a private party should be deemed an agent or instrument of the Government for Fourth Amendment purposes necessarily turns on the degree of the Government's participation in the private party's activities . . . ." *Id.* "The fact that the Government has not compelled a private party to perform a search does not, by itself, establish that the search is a private one." *Id.* at 615. Instead, we must determine whether the state actor — here, the police — "did more than adopt a passive position toward the underlying private conduct." *Id.*

The "inquiry is two-fold: (1) whether the facts presented establish that a private search was conducted; and, if so, (2) whether the police actions exceeded the scope of the private search." *Shaffer*, 209 A.3d at 972. The Commonwealth must satisfy both prongs of the test in order for the private-actor doctrine to exclude a search from the Fourth Amendment's protections.

At the first prong, the *Shaffer* Court concluded the actor performed a private search, because the defendant took his laptop to a computer-repair shop. Once the laptop was in the shop's custody, an employee discovered child pornography stored on the computer. He "had not been searching for illicit information and had never been asked by law enforcement to keep watch for evidence of child pornography." *Id.* Indeed, police had absolutely no contact with the computer-repair shop prior to the employee finding the illegal content and calling 911 to report the criminal activity.

Distinguishing **Shaffer**, the suppression court held the Commonwealth did not prove Ms. Monaco "acted entirely as a private individual." Trial Court Opinion, 12/11/20, at 13. The court observed that Ms. Monaco asked for the officer's permission to take the backpack from the scene. From this, the suppression court reasonably inferred that Ms. Monaco "believed herself to be under some amount of governmental control in this situation." **Id.** The police gave her permission, and Ms. Monaco placed the backpack in her vehicle. **See** N.T., 10/22/20, at 10.

At this point, rather than end the interaction, Corporal Nero brought up Mr. Baez's prior conviction for a firearm's possession. **See id.** at 13. Then, according to Ms. Monaco, the officer "asked if [she] minded [searching] the bag for [her] own protection, because, if [Ms. Monaco got] pulled over and there's something in the bag, it's going to be [her] responsibility." **Id.** She said, "sure." **Id.** Based upon our scope of review, we must accept Ms. Monaco's rendition of her interaction with Corporal Nero and his statements to her as true. **See Korn**, **supra**.

In light of the foregoing facts, the suppression court concluded "Corporal Nero created the situation that induced [Ms. Monaco] to search the backpack." Trial Court Opinion, 10/22/20, at 13. We agree.

Unlike the computer-repair-shop employee in **Shaffer**, who accidentally stumbled upon the child pornography in the defendant's laptop, Corporal Nero promoted Ms. Monaco to look inside Mr. Baez's backpack for firearms. Thus, Ms. Monaco's actions were not of her own volition. Moreover, we reject the

contention that he "did not request the search as part of [a] criminal investigation . . . ." Commonwealth's Brief at 24. The fact that Corporal Nero brought up Mr. Baez's past conviction of illegally possessing a firearm implies that he considered and was investigating the probability that Mr. Baez was again in illegal possession of a firearm.

Notwithstanding Corporal Nero's suggested intent to protect Ms. Monaco from possible negative ramifications of transporting the backpack, the officer's actions directly caused her to search it. "Here, specific features of the [officer's conduct] combine to convince us that [Corporal Nero] did more than adopt a passive position toward the underlying private conduct." *Skinner*, 489 U.S. at 615. Therefore, the Commonwealth failed to satisfy the first prong of *Shaffer*, *supra*; the private-actor doctrine does not exclude this search from constitutional scrutiny. *See id.*

Next, the Commonwealth contends Corporal Nero reasonably believed that Ms. Monaco could consent to the search on Mr. Baez's behalf.[4]

One exception to the warrant requirement "is a consensual search, which a third party can provide to police, known as the apparent-authority

---

[4] Curiously, the Commonwealth acquiesced to Mr. Baez's unsupported claim that police lacked probable cause to search his backpack for firearms. *See* Commonwealth's Brief in Opposition to Omnibus Pretrial Motion at 9-16 (arguing the private-party-search, apparent-authority-to-consent, inevitable-discovery, and inventory-search exceptions to the warrant requirement but omitting any assertion of probable cause). Thus, the Commonwealth has not preserved the issue of whether Corporal Nero had probable cause to suspect that Mr. Baez's backpack concealed a firearm. "Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).

exception." ***Commonwealth v. Strader***, 931 A.2d 630, 634 (Pa. 2007). A third-party's consent constitutionalizes a warrantless search, if investigators reasonably (albeit mistakenly) believe the third party has authority to consent on the property owner's behalf. ***See Illinois v. Rodriguez***, 497 U.S. 177, 188–89, (1990). However, the Commonwealth never manages to explain why it thinks that Corporal Nero's belief was reasonable.

After quoting case law and reciting a smattering of random facts, the Commonwealth declares, "Based upon Corporal Nero's extensive experience involving criminal investigations with motor vehicles and involving his canine, [he] believed [Ms. Monaco] exercised control over [the backpack] having been given the bag by [Mr.] Baez and then having placed it in her car." Commonwealth's Brief at 26. Next, it states that, if Ms. Monaco "had gotten pulled over, she would be responsible for the contents of the backpack." ***Id.*** Maybe so, but neither point demonstrates why a reasonable person in Corporal Nero's place would have mistakenly believed Ms. Monaco had authority to consent to a search on Mr. Baez's behalf.

And then the Commonwealth simply concludes by begging the question: "Corporal Nero's mistake is constitutionally excusable having believed [Ms. Monaco] had such authority and he 'acted on facts leading sensibly to their conclusions of probability.'" ***Id.*** (quoting ***Commonwealth v. Basking***, 970 A.2d 1181, 1189 (Pa. Super. 2009)). However, it failed to develop an argument to prove that conclusion.

- 12 -

"This Court will not act as counsel and will not develop arguments on behalf of an appellant." **Commonwealth v. Kane**, 10 A.3d 327, 331 (Pa. Super. 2010). Moreover, when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the underdeveloped issue as waived. **See id.**; **see also** Pa.R.A.P. 2101.

The Commonwealth's argument is underdeveloped. We cannot discern why, in its view, Corporal Nero's belief in Ms. Monaco's authority to consent to a search was reasonable. Thus, pursuant to **Kane** and Pa.R.A.P. 2101 we dismiss this issue as waived.

Accordingly, we affirm the decision to suppress the evidence seized from Mr. Baez's backpack.

Thus, the Commonwealth's final contention (that Mr. Baez's statement is not fruit of the poisonous tree) is meritless. Absent the police-instigated-third-party search of the backpack, the officers neither would have known about the firearm therein nor have asked Mr. Baez where he obtained it. Thus, it follows that Mr. Baez would not have confessed to obtaining the weapon in Mount Pocono. His self-incriminating statement is undoubtedly fruit of the poisonous tree, and the suppression court correctly suppressed it on that basis. **See Wong Sun v. United States**, 371 U.S. 471 (1963).

Order affirmed.

Judge Nichols joins the Memorandum.

President Judge Emeritus Stevens files a Dissenting Statement.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 12/1/2021*